[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 447 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 448 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 449 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 451 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 452 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 453 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 454 
The validity of the trusts in this case was settled by this court in Leggett v. Perkins (2 Comst., 297). It was there held that the trustees took a fee in the real estate of the testator by implication: that the testator having constituted his executors trustees of the estate devised to the daughters during their lives, and having authorized them as such trustees "to take charge of, manage and improve the same, and to pay over to them from time to time the rents, interest and net income thereof, it was "very obvious that a legal estate in the premises was necessary to enable the trustee to discharge these duties." It was moreover held that the trust was a valid one under the 3d subdivision of section 55 of the statute of uses and trusts (1R.S., 729); and that by section 60 of the same statute the whole estate in law and equity vested in the trustees. The court decided that the direction to receive and pay over to his daughters "the rents, interest, or net income thereof," instead of using the words "to apply them to the use of those persons," was sufficient, and invested them with the legal estate within the principle as laid down in Brewster v. Striker (2Comst., 19). These questions, therefore, must be considered as settled so far as they bear upon a decision of those now before the court, and it would be useless and unprofitable at this time to discuss or review the very able opinions of those judges whose views met with a favorable reception by a majority of the court.
It is contended by the counsel for the defendant that the plaintiff, as trustee, could derive no power of sale under the will, because the powers and trusts were conferred on three *Page 455 
executors and trustees, and were personal and limited to them.
The case shows that Caleb S. Woodhull was the only person named who consented to act and did act under the will: the other two renounced their appointment as executors, and declined to act as such, and have both since deceased. Letters testamentary were issued to Woodhull, and he acted as sole executor and trustee until the plaintiff, Leggett, was substituted in his stead. Under these circumstances, the sale by him to Manley was equally as valid as if the other executors had joined in the sale. By section 55 (2 R.S., 109), it is enacted that where any real estate or interest therein is given or devised by any will legally executed to the executors named therein or any of them, to be sold by them or any of them, or where such estate is ordered to be sold by them or any of them, and any executor shall neglect or refuse to take upon him the execution of such will, then all sales made by the executor or executors, who shall take upon them the execution of such will, shall be equally valid, as if the other executors had joined in such sale. Section 15 (2Revised Statutes, 71), enacts that every person named in a will, and not named as such in the letters testamentary, shall be deemed to be superseded thereby, and shall have no power or authority whatever as such executor, until he shall appear and qualify.
The case of Taylor v. Morris (1 Comst., 341) was one where a testator had appointed three persons his executors, and authorized them, or the survivor of them, to sell and convey any part of his real estate, "in case they should find it proper ormost fit, in their opinion," to sell the same for the purpose of paying his debts. Two of the executors neglected to qualify, and never acted as such. The other executor qualified and took out letters testamentary in his own name only, and subsequently sold and conveyed a portion of the testator's real estate. The court held that the power contained in the will was well executed; that the conveyance was valid, and that the power extended as well to discretionary as to peremptory powers of sale, whether it was coupled with an interest or not. *Page 456 
In the present case the power is "to sell and dispose of all and any part of the (testator's) estate, both real and personal, either at "public or private sale, and at such times and in such manner, and for such sum or sums as to them, in the exercise of their best judgment, may seem most expedient," bringing the case in its most important features almost precisely within that just cited. The principle had before been established by the cases cited by Judge RUGGLES in his opinion, and also in Niles v.Stevens (4 Denio, 399), where an executor refused to act, and an executrix duly qualified. The court held that the devise vested the estate in the executrix as though she only had been named, and that her conveyance passed a valid title. The cases cited by the defendant's counsel in opposition to this doctrine (Sinclair v. Jackson, 8 Cow., 584, and Green v. Miller,
6 John., 39), were decided before the adoption of the Revised Statutes, and do not therefore conflict with the decisions made after their adoption: besides, in the former case, the trustees had all taken upon themselves the execution of the trust, and one of them had not joined in the execution of the instrument, though living at the time of its date.
The trust created in the will was an express trust in respect to the interest of the two daughters. (1 R.S., 728, § 55,subd. 3; Leggett v. Perkins, 2 Comst., 297.)
The other two executors having renounced and having subsequently died, Mr. Woodhull, the only executor who qualified, became clothed with all the powers conferred by the will upon all the trustees. The fifth clause appointed the executors trustees to the estate of the two daughters, and authorized and directed them, "as such trustees, to take charge of all such portion of the estate as was given to them respectively, and to take care of, manage and improve the same to the best advantage, and to pay over to them respectively from time to time the rent, interest or net income thereof." It further authorized and directed the "executors," in case of any sale or sales of the real estate, or any part thereof, to put out and invest the shares, devised to the daughters respectively, of the proceeds, and to secure the same by bond and mortgage *Page 457 
on such real estate as they should judge ample and sufficient for its permanent safety and security; or, in the exercise of their discretion, to invest the proceeds in the purchase of real estate for the benefit of them. And afterwards, in the execution of the trust, at any time, if they thought best, to sell the same, or any real estate so purchased, with the allowance of the Court of Chancery first had and obtained for that purpose. It is pretty evident from this whole clause that the allusion to them as executors, so far as the provisions and powers therein are concerned, was as to their capacity as trustees, and not merely as executors, as such, under other provisions of the will.
Woodhull, therefore, was empowered and authorized to invest the daughters' shares of the proceeds of the real estate, if sold under the will, in the purchase of real estate for their use and benefit.
It appears that among other real estate, the testator died seised and possessed in fee, as tenant in common with his brother William Post, of what was known as the "Post Farm," situate in the city of Brooklyn. That on the 1st day of March, 1837, Woodhull, as executor, c., sold and conveyed, by deed of that date, to Robert Manly, the undivided moiety of that farm for the consideration of $150,000; and took back from him a bond and mortgage covering the premises, to him as executor, for the purpose of securing the payment of the purchase money. That mortgage was foreclosed, and on the sale Woodhull purchased a portion of the mortgaged premises, and took a deed therefor in his official character. No division or partition of the real estate had then been made; and by this purchase he held two-fifth parts of the property as the shares of the two daughters, and the residue for the benefit of the other devisees under the will. The question here arises, what title did he acquire by the purchase under the foreclosure. By the fifth clause of the will the executors (as trustees) were fully empowered, as they thought best and most advisable, to partition, divide or make sale of all or any part of the real estate owned between the brother of the testator and himself; "and *Page 458 
on any such division or sale to take and accept as the share ofmy estate, or some part thereof, and also to purchase either at public or private sale for the benefit of my estate generally, or for some one or more of my children, so much of the property so sold or divided as they might judge most expedient and proper, and most beneficial to all persons interested therein." Under this clause it appears to me that Mr. Woodhull became not only invested with the legal title to the property, so far as the daughters' life estate in their shares was concerned, but also to the rights and interests of their children. It was probably for the benefit of all persons interested in the estate, that the premises under the mortgage sale should be purchased in by the trustee. At all events, it seems that he came to such conclusion, in the exercise of his discretionary power granted in the will. He could not well sell, dispose of or purchase real estate for their benefit, unless all his acts in relation to such purchases and sales were for the ultimate benefit of the children, nor unless their rights could be sold, or could be affected, or benefited by the purchase of real estate, or investment of money therein, as the trustee should think proper. One was necessarily incident to and a consequence of the other. And the evident intent of the testator could not be carried into full effect, without giving to the clause this construction. In other words, the purchase back under the Manly mortgage was an investment of their shares of the proceeds of the sale in real estate, as authorized by the will, to the daughters for life, and to the children after them. Otherwise no real estate could be purchased by them, or investment made, which would enure to the benefit of the children. Woodhull, therefore, took the whole legal estate in fee by implication, so far as the infants were concerned. By the partition afterwards, he held two-fifths as the share of the daughters and their infant children, until his resignation as trustee. If this be so he had the power to sell, under the approbation of the Court of Chancery (now of the Supreme Court), until his resignation. He did not sell, however, but resigned his trust, and by an order of the Supreme Court, bearing date the 30th day of *Page 459 
March, 1850, the plaintiff, William H. Leggett, was appointed trustee under the will in his stead, with all the powers, trusts and interests which had existed in his predecessor.
The next question which arises, therefore, is, whether the Supreme Court could confer all the powers of the original upon a substituted trustee.
The statute in relation to uses and trusts (1 R.S., 730, § 69,) declares, that upon the petition of any trustee the Supreme Court may accept his resignation and discharge him from the trust, under such regulations as shall be established by the court for that purpose, and upon such terms as the rights and interests of the persons interested in the execution of the trust may require. A subsequent section provides for the removal of any trustee who shall have violated or threaten to violate his trust, or who shall be insolvent, or shall be deemed unsuitable. The 71st section enacts that the Supreme Court shall have full power to appoint a new trustee in place of a trustee resigned or removed, or cause the trust to be executed by one of its officers under its direction. These sections extend only to cases of express trust, to which class the present confessedly belongs. But they are extended by section 102, to apply equally to powers in trust, and the grantees of such powers. The plaintiff, Leggett, was substituted trustee under these provisions, and it appears to me that he had full power under them to execute the trusts remaining under the will, under the approbation of the Supreme Court. It is a well settled principle, that a court of equity will not permit a devise in trust, which is valid in other respects, to fail for the want of a trustee. (4 Ves., 708; 5id., 495; 6 id, 656; 8 Paige, 295; 1 Barb. Ch., 565; 2id., 381.)
It is insisted, however, that Leggett was not invested with the powers of his predecessor, because the proceedings for that purpose were commenced by action instead of petition. It is believed that this objection is not tenable. The 69th section is, that when the application is by a trusteee for permission to resign, it may be upon petition; but the section does not declare that the trustee shall or may not commence by action. *Page 460 
Indeed, the latter is the most solemn and conclusive mode, and includes in its definition the proceeding by petition. In the matter of Van Wyck (1 Barb. Ch., 565), just cited, the Chancellor remarked that the usual and most proper course of proceeding for the purpose of changing a trustee was by bill (action now), to which all persons interested are either actually or constructively made parties. There is no force in this objection.
Leggett, therefore, being thus substituted, was, in my judgment, vested with all the powers of Woodhull, and was authorized to sell as he did under the proceedings instituted in the Supreme Court. No objections have been raised by the defendants to the regularity of these proceedings nor to the form of the deed tendered. My conclusion on this branch of the case is, that the defendants would acquire a good title to the premises under the deed executed by Leggett as trustee under the will; and it was well remarked by my brother STRONG, in his opinion in the court below, that the fact that "it had been sanctioned by the Legislature, and that others had joined with him in the conveyance, would not surely vitiate or impair the title."
But it is proper here to consider, whether that act was constitutional and valid in whole or in part, and how far it can or may operate in favor of the plaintiff and in aid of the defendants' title. If Woodhull acquired the rights of the infant children when he purchased back the premises under the mortgage, a good title, as has been shown, could be conveyed to the defendants. If not, the question as to the validity and constitutionality of the legislative acts, becomes vitally important. It was certainly competent for the Legislature to relieve the daughters from the prohibition contained in the 63d section of the statute (1 R.S., 730), that no person beneficially interested in a trust for the receipt of the rents and profits of lands, can assign or in any manner dispose of such interest. The acts already referred to, provide for the conveyance of the rights of the daughters, and obviate any objection under the section just cited. So far then, they are constitutional and valid. But it is believed that these acts of the Legislature were valid, *Page 461 
in all respects. It is urged, however, that they are unconstitutional and void; because the will being valid under the general laws of the State when made, no after legislation could alter or destroy its effect, and the Legislature could not divest the title or the contingent interests of persons not then in being.
In the case of Cochran v. Van Surlay (20 Wend., 365), the Court of Errors held, that a private act of the Legislature, authorizing the sale of the estate of infants for their maintenance and education, is within the scope of the legitimate authority of a State Legislature, and was constitutional. The Chancellor, in his opinion, doubted whether the Legislature could by special acts authorize a sale, so as to affect the contingent rights of persons not then in existence, and who might thereafter become entitled to the same, under the limitations in the will. That question was not, however, distinctly passed upon, as it was not necessary, the Chancellor observed, to a decision in that case. It appears to me, moreover, that the decision of the court necessarily disposed of the question. How could a sale be sanctioned, as was the one there, unless it cut off all contingent interests? The same objection was made to the title as is made here, and the court said the sale was valid and effectual.
In Powers v. Bergen (2 Seld., 358), this court held, that the Legislature (except in cases of necessity, arising from the infancy, insanity or other incompetency of those in whose behalf it acts) has no power to authorize by special act the sale of private property for other than public uses, without the consent of the owner. In that case no reason appeared, and the court said the existence of such necessity will not be presumed, when the facts which would create it are neither shown by proof nor recited in the statute. The present case is clearly distinguishable from that, inasmuch as the proceedings show that the property authorized to be sold consisted of vacant lots, which had never yielded any income since the death of the testator: that the property had been largely assessed for taxes, and had been sold for the non-payment, by reason of the want of means to pay them: that the certificate of the sales were *Page 462 
held by purchasers, and were drawing rates of interest at fifteen per cent, and that unless redeemed, the equity of redemption would be lost: that the daughters and their children had no other property or estate, except a small income and annuity, for their support and education: that the New York property was the only productive property, and that, by reason of its dilapidated condition, required the expenditure of large sums of money for repairs: that the income derived from it was not sufficient for such repairs, and means could not be provided, unless by a sale of the Brooklyn lots. In Mrs. Leggett's case it had taken within $3,500 of one-quarter of the net income of the New York property for several years to pay the current expenses and charges upon it.
Under all these facts and circumstances it was certainly a wise provision, and calculated greatly to promote the future interests of the infant heirs, as well as the present rights of the daughters, to authorize a sale, as the Legislature did, if they possessed the power so to do. The strongest reasons existed for this course, and the case is entirely distinguishable from that in 2 Selden, 358. Indeed, that case would seem to sanction the proceedings here. The trustees held the premises in question, in trust for the use of the daughters during their lives, and the remainder was limited to their respective lawful issue, their heirs and assigns forever. Their children in esse at the time of the passage of the acts were all minors, and were seised in fee of the entire remainder, subject to open and let in after-born children, as to whom there was, of course, no vested interest; but each child as it was born would become seised of its proportionate share, as tenant in common with its brothers and sisters. (2 R.S., 723, 725, §§ 9-13, 28, 30; Cochran v.Van Surlay, 20 Wend., 365; Hannan v. Osborn, 4 Paige,
336, 342; Nodine v. Greenfield, 7 Paige, 544; Moore v.Lyons, 25 Wend., 119, 143, 144.) Such children, not having any vested interest at the time of the sale, could have no claim upon the premises; but they would be entitled to receive their shares of the proceeds of sales, and of these the acts and the proceedings do not deprive them. The Legislature, as the *Page 463 
sovereign, had the power, for good and sufficient reasons, to authorize and direct the sale of the interests of the cestuisque trust, and of the children in esse at the time of the passage of the acts. It has frequently exercised such power. (See act relating to Spingler's estate, Laws 1829, 567; actrelating to Morris' estate, Laws 1853, 19; act relating toestate of T.B. Clarke, Laws 1814, ch. 78.)
The courts have established this power by judicial decisions,Clark v. Van Surlay (20 Wend., 365), and I think the Legislature also had the power to direct, as it did by the acts in question, a sale of the premises so as to bind the interests of any posthumous children of the daughters, who on their birth would become interested in the remainder created by the will. Such children, when they came into existence, would be subject to then existing laws. They would be divested, as already remarked, of all claim upon the land, but would be entitled to their shares of the proceeds of the sales in the hands of the trustees. (Baker v. Lorillard, 4 Comst., 266, 267.) The Legislature is vested with all the powers of government which have not been expressly or impliedly delegated to other departments, and there are no restraints upon its power except such as are imposed by the Constitution. (3 Kern., 378: 20 Wend., 381; 15 N.Y.,
543; and various other cases.) The acts in relation to the estate of Clarke, before cited, were sustained by the courts on the ground, as I understand it, that the Legislature, in respect to persons acting under disability, acted as parens patriæ.
The facts and circumstances in the present case show, that it was almost absolutely necessary to a protection of the interests of those entitled to a future interest in the premises and to prevent their entire loss. The power must exist somewhere, and it is necessarily in the Legislature, to provide for their sale or disposition for the benefit of those concerned. See opinion of JOHNSON, J., in Jackson v. Babcock (16 N.Y., 246, 249), and of DENIO, J., in Towle v. Forney (14 N.Y., 423), where the decision of the Court of Errors in Cochran v. Van Surlay (20Wend., 365) was upheld upon the principle of *Page 464 stare decisis; both which cases are, I think, conclusive. The acts of the Legislature made it requisite that the court should order and confirm the sale, if, in its opinion, it would be for the best interest of the cestuis que trust and their children, whether then in being or not. All the proceedings have been in strict conformity with the acts. The rights of all have been carefully and fully protected. No injustice has been done, but on the contrary great benefits have been secured, as well to all those in full life whose rights are concerned, as to any who may have or be hereafter entitled to any interest. In my judgment a conveyance to the purchasers under the sales will carry the entire fee, against after-born children as well as those existing. These views lead to the conclusion that the purchasers will acquire a valid title to the premises in question by the execution and delivery of the deeds, which have been tendered; and the judgment should, therefore, be affirmed.
All the judges concurred: and the court, by independent, majorities on each point, affirmed the validity of the deed on both grounds; as an execution of the trustee's power under the will, and as being effectual, irrespective of that question under the act of the Legislature.
Judgment affirmed.