HOYT (HALL v.). See Case No. 5,934.

---

## Case No. 6,809.

HOYT v. The JOSHUA BARKER.

[See Case No. 7,547.]

---

## Case No. 6,810.

HOYT v. SPRAGUE et al.

[12 Chi. Leg. News, 25; 8 Reporter, 616.] [1]

Circuit Court, D. Rhode Island. 1879. [2]

PARTNERSHIP—SETTLEMENT OF ESTATE.

An administrator of a deceased partner has power to settle with the surviving partners on such terms as in the exercise of good faith and reasonable diligence he may choose to accept. He is the personal representative of the deceased partner, and has all his powers of settlement, except that being trustee for the next of kin, he cannot give away anything.

[Cited in Nellis v. Pennock Manuf'g Co., 38 Fed. 380.]

[This was a bill in equity by William S. Hoyt against Amasa Sprague, William Sprague, Fannie Sprague, Mary Sprague, the A. & W. Sprague Manufacturing Company, and Zachariah Chaffee, assignee of said company.]

LOWELL, Circuit Judge. The hardships of the case, on the one side, that the complainants should have lost a large estate by bad investments, not originally made by them; and on the other, that the creditors of the manufacturing company should lose a large part of the property to which they gave credit, have been brought to our notice by counsel. As these considerations balance each other, there will be the less difficulty in considering the case in its purely legal aspects. The complainants seek to set aside or open the account taken by the referees and acted on by the parties in 1865, on the ground that it was false and fraudulent, and that its method was illegal; and whether the account is opened or not, they ask that the amount justly due to the complainants in 1865 may be declared not to have been lawfully invested in the stock of the A. & W. Sprague Manufacturing Compa-

---

[1] [8 Reporter, 616, contains only a partial report.]

[2] [Affirmed in 103 U. S. 613.]

ny, but to have remained a charge upon the property transferred to the company, and by the company to the defendant Chaffee, as trustee for its creditors. They allege that the whole scheme for keeping the property together was fraudulent, and a sort of conspiracy intended to give and actually giving undue advantages to the surviving partners of William Sprague, the grandfather of the complainants. The defendants maintain that the account was properly taken, and was just and true, and that the transfers were valid; and that the complainants are barred by lapse of time from prosecuting their claim. They deny the frauds in general and in particular.

We do not find evidence to support the numerous charges of fraud, over-persuasion of the administratrix, etc., with which the bill abounds. On the contrary, it is quite clear that this is one of those not unfrequent family arrangements by which a property in trade or manufactures has been kept together, for the supposed benefit of all parties. The very purpose of the complainants' grandfather in forming the co-partnership, on his death-bed, probably was to have the business continued precisely as it was continued; but as he had not the knowledge requisite for carrying out his wishes in a legal method, the property of the complainants, while they were minors, could not lawfully be kept in the business. The defendants argued that the bill could not be supported if the charges of fraud were not maintained, under the rule laid down in the following cases: Price v. Berrington, 3 Macn. & G. 486; Ferraby v. Hobson, 2 Phil. Ch. 255; Glascott v. Lang, Id. 310; Fisher v. Boody [Case No. 4,814]; Eyre v. Potter, 15 How. [56 U. S.] 42; Mt. Vernon Bank v. Stone, 2 R. I. 129; Wilde v. Gibson, 1 H. L. Cas. 605; Tillinghast v. Champlin, 4 R. I. 173. We do not understand that there is an absolute rule in equity that the bill shall be dismissed if the charges of fraud are not sustained. If the court can fairly discover in the bill other distinct and substantive grounds of relief, which are alleged not merely as incidents or supports to the charges of fraud, it may proceed to the consideration of those allegations, if it is of opinion that the defendants will not be prejudiced by that mode of dealing with the case. Maguire v. O'Reilly, 3 Jones & L. 224; Archbold v. Commissioners of Bequests, 2 H. L. Cas. 440; Hickson v. Lombard, L. R. 1 H. L. 324; Baker v. Bradley, 7 De Gex, M. & G. 597.

We think it can be made out from this bill that much of the fraud therein charged is intended to be considered a legal result of admitted facts. These charges consist in a considerable part, of an imputation of motives and intentions, which, indeed, are all denied by the answers, and thereby disproved, so far as they are material; but we can, without great violence to the language of the complaint, ascertain that it relies on a continuing trust, arising out of the mode in which the affairs of the firm were conducted and settled, and the conveyances to the corporation were made, independently of the allegations of fraud. We therefore proceed to consider the questions of trust. The frame of the bill, and more especially the briefs and arguments in its support, seem to us to attribute to surviving partners a more onerous relation of trust than is supported by any authorities cited, or which we have been able to find. Partners are quasi trustees for each other, both before and after dissolution. When one partner has retired, or become bankrupt, or died, both partners or their representatives still remain quasi trustees, which means scarcely more than that they must account to each other in equity. Farnam v. Brooks, 9 Pick. 212; Knox v. Gye, L. R. 5 H. L. 656. Upon the death of William Sprague it was the duty of the surviving partners to pay to his administratrix the actual value of his share of the joint property, when and as it might be realized by due diligence, and without undue sacrifice. Moore v. Huntington, 17 Wall. [84 U. S.] 417. It was not their duty to see that an appraisement was made of this share in the probate court, nor would such an appraisement have bound them if it had been made. We believe jurisdiction is given in some states to the probate court to wind up partnership affairs; but it is not so in Rhode Island; and if it were, there is no obligation upon the surviving partners to settle through the courts, as we shall presently show. If the survivors failed to settle with the administratrix as promptly as was practicable, whether the delay was with her acquiescence or not, she would have the right, when the settlement should be made, to take her original share with interest, or with profits, as she might then elect. In other words, the survivors remained liable as partners so long as they treated the capital of the deceased partner as part of their capital; but the administratrix did not remain so liable in all respects; she could elect not to be subject to losses. On her part the administratrix had power to settle with the surviving partners on such terms as in the exercise of good faith and reasonable diligence she chose to accept. The argument that there is some specially legal mode of accounting cannot be sustained. There is none such. The administrator is the personal representative of the deceased partner, and has all his powers of settlement except that being a trustee for the next of kin, he cannot give away anything. No doubt the administrator may bring a suit and force a settlement in a mode which Mr. Justice Lindley says is "generally ruinous to the other partners." Lindl. Partn. 1044. But he is not bound to take this course. Settlements are made out of court "to a vast extent, every day," says Lord Langdale, M. R. (11 Beav. 13); and are always upheld, in the absence of negligence

or bad faith. Williams, Ex'rs, 939; Lindl. Partn. 1069; T. Pars. Partn. 442; Colly. Partn. § 638; Farnam v. Brooks, 9 Pick. 212; Codman v. Rogers, 10 Pick. 112; Chambers v. Howell, 11 Beav. 6; Smith v. Everett, 27 Beav. 446; Davies v. Davies, 2 Keen, 534; Wedderburn v. Wedderburn, 4 Mylne & C. 41, 45, per Lord Chelmsford. No case has been shown us which contradicts this somewhat elementary proposition. The decisions cited make two other propositions equally clear: 1st, that the surviving partners cannot force the administrator to sell to them at a valuation; and, 2d, that when the administrator is himself the surviving partner, or one of them, he cannot be both buyer and seller. Neither point is applicable to this case. Such being the situation of the parties, they came to an accounting in 1865, by means of the agreement C, and the action under it. Mary Sprague signed that paper, both as administratrix and as guardian. It seems there is a statute in Rhode Island which authorizes a guardian to submit disputes to arbitration. The defendants argue that the statute does not extend to such a case as this. It seems to us broad enough for that purpose. At all events the administratrix, could ascertain the value of her interest by a reference, or in any other mode that should be fair and reasonable. The share of the guardian was set off separately because the other parties represented by the administratrix, that is to say, she, herself, and her son Byron, were of age. He had received his share, and hers was settled in the course of the same proceedings. If the administratrix had authority to make the reference, we see no objection to the award being made in severalty to the parties interested. In making up the account, profits were allowed instead of interest; and we cannot see that the full share was not set off to the guardian. A settlement of profits in such a case, in a court of equity, is a difficult and complicated matter. The courts usually require the master to find what profits are to be attributed to the capital of the deceased partner as distinguished from other sources of profit, such as the skill of the survivors, or any other circumstances which may have increased the profits. Mr. Lindley says that special inquiries on this subject are almost always necessary, and that the simple rule of three is not the rule of the courts. Partn. p. 980. See Willett v. Blanford, 1 Hare, 253, approved by James, L. J.; Vyse v. Foster, 8 Ch. App. 309, 331, and by the lords justices in Simpson v. Chapman, 4 De Gex, M. & G. 154. It seems that this complicated account was ordered in Brown v. De Tastet, Jac. 284; and we learn from a statement made in argument at 2 Mylne & K. 658, that after the plaintiff in Brown v. De Tastet had obtained a decree of the house of lords he abandoned the case because the accounting was so difficult. When the surviving partner is not himself the executor he is usually granted an allowance for his services. Lindl. Partn. 982; Brown v. De Tastet, Jac. 284; Cook v. Collingridge, id. 607.

The charges of fraud and concealment in respect to the account have not been sustained; nor is it true, as alleged, that both the referees were attorneys of A. & W. Sprague; they represented different interests. We think the share assigned the guardian was assigned with good faith, care and diligence, and with full opportunity for investigation; and was as large or larger than the amount which a court of equity would have given. It is to be observed that no complaint is made of the settlement of the Quidneck property by the same referees at the same time and as part of the same transaction. The defendants, however, insist that whatever may have been the good faith and the diligence of. the parties, the result reached was illegal and void, because, under the law of nations, an appointment of a guardian for non-resident minors could not be lawfully authorized by a statute of Rhode Island; that such a power could not be entrusted to the probate court under the constitution of Rhode Island; that the legislature of that state could not constitutionally authorize the change of investment; that there was some real estate situated out of Rhode Island which could not be conveyed by virtue of the resolve.

1. All or nearly all the states have asserted and exercised the right of passing laws for the appointment of guardians of the property within the state of persons not residing therein; and the power to do so seems to result from that other admitted principle, that a guardian appointed without the state is permitted to act within it only by comity, and that to a somewhat limited extent.

2. The constitution of Rhode Island, adopted in 1843, declares, in article 10, § 2: "Chancery powers may be conferred on the supreme court, but on no other courts to any greater extent than is now provided by law." The defendants say that the power to appoint property guardians is a chancery power. No doubt it is one of the powers exercised by courts of chancery, and it may, at one time, have been exclusively exercised in chancery. So were the powers to grant new trials; to enable parties to interrogate each other; to permit set off; to make partition of lands, and a great many others which in 1843 belonged concurrently or exclusively to other courts. We understand that the constitution refers to those kinds and classes of powers which in 1843 would be commonly known as chancery powers; and certainly the appointment of guardians would not have been so described in Rhode Island, or any other state of the Union, at that time. But it is enough to say that this precise power had already been "provided by law" in Rhode Island, before the constitution was adopted, and is therefore within the express exception.

3. The right of a legislature to authorize a change of investments by trustees has been often exercised, and generally sustained. See Thurston v. Thurston, 6 R. I. 296, and the cases there cited; Florentine v. Barton, 2 Wall. [69 U. S.] 210; Williamson v. Berry, 8 How. [49 U. S.] 495; Watkins v. Holman, 16 Pet. [41 U. S.] 25; Wilkinson v. Leland, 2 Pet. [27 U. S.] 627; Ward v. New England Screw Co. [Case No. 17,157]; Leggett v. Hunter, 19 N. Y. 445; Sohier v. Massachusetts General Hospital, 3 Cush. 483. Many other cases are found in the briefs. Whatever might be our opinion upon the point if it were new, we do not feel at liberty to disregard the authorities. If the legislature had the power, the propriety of its exercise in a particular case is not a question for the courts. Up to some time in 1865, an investment in manufacturing stock by a guardian was both usual and lawful in Rhode Island, as it still is in Massachusetts and some other states. Sometime in that year, a date which the parties to the argument here did not deem important, a law was passed which, by implication, excludes such stocks from being the proper subjects of such investment. This resolve was passed in 1863. Had it been later than the general law above mentioned, we should strongly incline to the opinion that it would be void, as making a special exception to a general law. This is the distinction taken in Picquet's Case, 5 Pick. 65, and it seems entirely sound. But leave for the investment having been granted in 1863, we do not think the general law in question repealed it or was intended to do so, even if it was passed, as we understand it was, before the parties had signed agreement C.

4. With respect to real estate not in Rhode Island no specific issues are raised by the pleadings, nor does the record enable us to say what its legal situation was or is. If there were such lands standing in the name of William Sprague the elder at the time of his death, but bought with the joint funds and used in the joint business, and if they were not needed to pay joint debts, we may assume that under the rule of the American cases they would descend to William's heirs, subject to the equitable rights of the heirs of Amasa. If the title of the complainants to the undivided part of these lands was not lawfully divested by the settlement and conveyance of 1865, then they still hold it, though they have received payment for it; and, speaking for myself, I should doubt whether a court of equity ought, for this reason, to set aside the settlement at their request, unless the remedy at law was clearly shown to be inadequate.

We have considered the objections to the form of the petition to the legislature, and to the form of the bond given to the judge of probate, and do not consider them well taken, nor that they would vitiate the settlement in the absence of fraud, if they were sound. Our conclusion, therefore, is that the settlement of 1865 is both lawful and honest; that it gave a full share to the guardian and that the deed K conveyed to the corporation a title free from a trust to account further to the complainants. We have not found it necessary to examine thoroughly the defense of the statute of limitations or that of laches. We understand that after a settlement has been arrived at, or after the joint business is closed, six years is an absolute bar at law and in equity to a claim of this nature. Farnam v. Brooks, 9 Pick. 212; Tatam v. Williams, 3 Hare, 347; Knox v. Gye, L. R. 5 H. L. 656; Bank of U. S. v. Daniel, 12 Pet. [37 U. S.] 32. It is not within the exception of merchants' accounts. Codman v. Rogers, 10 Pick. 112. If there were fraud, concealed from the parties interested, the bar would not begin to operate until they had discovered the fraud. Bayley v. Glover, 21 Wall. [88 U. S.] 342. But it has been lately held by the supreme court that the concealment does not give the party a fresh start of six years, but only a reasonable time after the facts are known. Brown v. Buena Vista Co., 95 U. S. 157.

We do not understand that there is any evidence in this case of a concealed fraud. The allegations are somewhat vague and the testimony is not less so. All the parties who are living deny concealment as well as fraud. And we do not see that either is made out. The complainants say that they were ignorant of the mode and time of settlement, and of the particular proceedings which they now say were illegal. For the purpose of this inquiry, we must assume them to have been illegal; but they were not of a secret nature. The means of knowledge were at hand as well before as after the failure of the corporation. Nor are we advised that ignorance of facts is a good replication to a plea of the statute in the absence of fraud. If the question is of laches, in equity, which we hardly think it is, then the fact that the creditors of the corporation are the real parties adversely interested becomes important, and makes this case somewhat analogous to those cited by the defendants, in which stockholders seeking to relieve themselves of their liability on the ground of fraud or misrepresentation, have always been held to strict diligence. The fact is not without importance in this connection, and indeed it has some bearing on the whole case, that the losses and disasters which have brought the corporation to bankruptcy appear to have happened long after the settlement of 1865, and in all probability after the younger of the complainants came of age. The bill charges the fault to have been in the management of the corporation, in which each of the complainants was an owner for more than six years after becoming sui juris. The defendants attribute their misfortunes to the revulsion of business which occurred in the year 1873. Whichever party is right in respect to the causes of misfortune, we think it very

doubtful whether a court of equity could permit stockholders to exchange their position for that of secured creditors under such circumstances, if there were no statute of limitations in the case.

Prayers are found in the bill that Mary Sprague and William Sprague should account as guardians. We understood the parties to say that other suits are pending for this purpose, and we did not understand that such accounting was asked in this suit, except as ancillary to the relief against the property in the hands of Chaffee. We have not therefore considered whether Mary Sprague would be liable for her delay in calling the partners to an account, or for any other acts or omissions of hers, except as they affected the trust sought to be established in this case. Bill dismissed, with costs.

[NOTE. An appeal was then taken by the complainants to the supreme court, where the decree was affirmed in an opinion by Mr. Justice Bradley, who held that the complainants' acquiescence precluded them from the relief sought. As the administratrix and guardian had allowed the assets of the deceased partner to remain in the firm, her lien on the property thereafter acquired was postponed to that of creditors, when a case arose for an equitable marshaling of assets. The beneficiaries of the deceased partner's estate had no greater claim than she had. 103 U. S. 613.]

---

HOYT (STEPHENSON v.). See Case No. 13,373.

HOYT (UNITED STATES v.). See Cases Nos. 15,409 and 15,410.

HOYT (WAKEMAN v.). See Case No. 17,051.

HOYT (WILLISON v.). See Case No. 17,772.