HELENE ROCHAT METCALFE, Appellant, v. UNION TRUST COM-
PANY OF NEW YORK, as Trustee of the Estate of FRANCIS J.
METCALFE, Deceased, Respondent, Impleaded with Others.

1. TESTAMENTARY TRUSTS — STATUTE PERMITTING MERGING OF
REMAINDER OF TRUST ESTATE IN BENEFICIARY ENTITLED TO INCOME
THEREOF — PERSONAL PROPERTY LAW (L. 1897, CH. 417, § 3) NOT RETRO-
ACTIVE.  The provision of the Personal Property Law (L. 1897, ch. 417,
§ 3) which relates to trusts of personal property created to provide
an income for the beneficiary thereof and provides a way in which the
principal fund of such trusts may be merged in the beneficiary and the
estate of the trustee thereupon cease is not retroactive and applies only
to trusts created after its enactment; it superseded and took the place of
chapter 452 of the Laws of 1893, changing the former rule (1 R. S. 730,
§ 63), which by its language was expressly applicable to "any trust
heretofore or hereafter created," and omitted the words "any trust here-
tofore or hereafter created," thereby justifying the inference that the
legislature intended to make the new statute prospective and applicable
only to trusts created after its enactment.

2. SAME — WHEN TRUST TO PAY INCOME TO TESTATOR'S WIDOW FOR
LIFE, OR UNTIL SHE REMARRY, CANNOT BE MERGED IN HER BY RELEASE
OF REMAINDERMEN.  Where the children of a testator entitled to the
principal of a trust fund established by testator to provide an income for
his widow during her life or until she should remarry, duly assigned and
transferred to the widow all their right, title and interest in and to the
remainder in such trust fund, and the widow by a subsequent instrument
in writing released to herself, as the person entitled to the entire remain-
der, all of her interest in the income of the fund, the trust is not thereby
merged and terminated, and the trustee released from responsibility under
the trust, under the Personal Property Law (L. 1897, ch. 417, § 3),
where the will, by which the trust was created, became effective in 1892,
when the statute then in force (1 R. S. 730, § 63), made the interest of the
beneficiary of such trust inalienable, and the testator clearly expressed his
intention that his widow's interest should be restricted to the income of
the trust fund during her life, or until she remarried.

*Metcalfe* v. *Union Trust Co.*, 87 App. Div. 144, affirmed.

(Argued January 24, 1905; decided February 21, 1905.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered
December 22, 1903, in favor of defendant upon the sub-
mission of a controversy under the provisions of sections 1279
and 1280 of the Code of Civil Procedure.

The following are the material facts, which are set forth in an agreed statement by the parties, upon the submission of their controversy to the Appellate Division, in the first department. The defendant, the Union Trust Company, holds, as trustee under the will of Francis J. Metcalfe, deceased, and by direction of a decree of the Supreme Court, construing the testator's will, a fund ; the income of which it is required to pay to the plaintiff, Helene R. Metcalfe, the testator's widow, during her life, or until she remarry. The principal of the fund, upon the happening of either event terminating the trust, is to be paid over to the four children of the testator, also defendants, in the proportions, as to each, specified in the will. The children, being a son and three daughters, having become of age, as remaindermen, by an instrument in writing and under seal, in February, 1903, assigned and transferred all their right, title and interest in and to the remainder in the trust fund to the plaintiff; who, thereupon, by another instrument in writing, released to herself, as the person entitled to the entire remainder, all of her interest in the income of the fund. Thereafter, she demanded from the Union Trust Company the payment of the trust funds; offering a release from its liability, as trustee. Her demand was refused by the trustee, upon the grounds that the trust had not been terminated and that the release would not protect it from liability. The trustee declares its willingness to relinquish the *corpus* of the trust, if it be decided that the trust was terminated by the transactions mentioned.

The question, as defined by the submission, is whether the trust has terminated and whether the fund, with all its accrued income, is now payable to the plaintiff. The testator died in 1892; having provided for his wife and four children by a will, which gave his residuary estate, (with an unimportant exception), to the trust company upon trusts for their benefit. In an action for the judicial construction of the provisions of the will, it was adjudged, so far as it is material to this controversy, that the trust for the widow's benefit is valid and " entitles her to the income of one-third of the entire

estate during her life, or until she remarry." The trust provisions for the children were adjudged to be ineffectual and the distribution of the estate, remaining after setting apart one-third for the widow's trust, was directed to be made to the children. In this adjudication all parties have acquiesced. According to the will, which was thus construed, the trusts for the testator's three daughters were intended to continue for their lives, with remainders over to issue, or, failing issue, to survivors; while the son's trust was to terminate at his majority. The testator, when providing with respect to the trust for his widow, expressed his "desire," in the event of her remarriage, or death, "that the interest of her one-third be used to increase the investments made for my children;" either all, naming them, or the survivors.

The Appellate Division directed judgment against the plaintiff upon the question in difference between the parties.

*Lester & Graves* (*Harmon S. Graves* and *Charles S. Yawger* of counsel) for appellant. The trust has been terminated under the provisions of the Revised Statutes of New York, viz., chapter 452 of the Laws of 1893 and chapter 417 of the Laws of 1897. These statutes are clearly constitutional. (Lewin on Trusts [3d ed.], 262, 269, 566, 595, 598, 633, 781; *Jones* v. *Lewis*, 1 Cox, 199; *Atty.-Gen.* v. *Parker*, 3 Atk. 577; *Atty.-Gen.* v. *Forster*, 10 Ves. 338; *Wilkinson* v. *Parry*, 4 Russ. 276; *Dyett* v. *C. T. Co.*, 140 N. Y. 65; *Schenck* v. *Barnes*, 156 N. Y. 316; Fowler Pers. Prop. Law, 38, 49; *Noyes* v. *Blakeman*, 6 N. Y. 576; *Leggett* v. *Perkins*, 2 N. Y. 297; *Gott* v. *Cook*, 7 Paige, 537; *Lent* v. *Howard*, 89 N. Y. 169; *Cochrane* v. *Schell*, 140 N. Y. 523; *Robinson* v. *Pett*, 2 White & Tudor L. C. 215.) When all interests have certainly and finally vested, and all parties are in being and *sui juris* and desire the termination of a trust, a court of equity will terminate the same, if equity demands it. (*Short* v. *Wilson*, 13 Johns. 33; *Blood* v. *Kane*, 130 N. Y. 519; *Locke* v. *F. L. & T. Co.*, 140 N. Y. 135; *Smith* v. *Harrington*, 4 Allen, 566; *Bowditch* v. *Andrews*, 8 Allen,

339 ; *Norris* v. *Thompson*, 19 N. J. Eq. 314 ; 2 Beach on Trusts, § 760 ; *Cuthbert* v. *Chauvet*, 136 N. Y. 328 ; *Matter of Stone*, 138 Mass. 476 ; *Sears* v. *Choate*, 146 Mass. 395 ; *Snedeker* v. *Congdon*, 41 App. Div. 436.)

*Hoffman Miller* for respondent. Chapter 417 of the Laws of 1897 is not retroactive in its effect. (4 R. S. [8th ed.] 2439 ; *Lent* v. *Howard*, 89 N. Y. 169 ; *Graff* v. *Bonnett*, 31 N. Y. 9.) By testator's will the estate of trustee and beneficiary was limited, and could not be abridged by act of either party. (*Lent* v. *Howard*, 89 N. Y. 169 ; *Matter of U. S. T. Co.*, 175 N. Y. 304 ; *Oviatt* v. *Hopkins*, 20 App. Div. 170 ; *Snedeker* v. *Congdon*, 41 App. Div. 433 ; *Newcomb* v. *Newcomb*, 33 Misc. Rep. 191 ; *Mills* v. *Mills*, 50 App. Div. 221.)

Gray, J. The judgment rendered in the action brought for the construction of the will has settled, as the law of the case, that the trust created for the testator's widow was valid for her life, or until her remarriage, and the only question for our consideration is whether that trust had ceased, as the result of the assignment by the remaindermen of their right to the remainder and of the release by the widow of the interest in the income. When the trust was created, in 1892, section 63 of the Statute of Uses and Trusts was in force, (1 R. S. 730), applicable alike to real and personal property ; which prevented the beneficiary of such a trust from assigning, or disposing of, his interest. Subsequently, in 1893, (Laws of 1893, chap. 452), that section of the Revised Statutes was amended, so as to permit a "person beneficially interested in the whole or any part of the income of any trust heretofore or hereafter created for the receipt of the rents and profits of lands or the income of personal property," who "shall have heretofore become or may hereafter be or become entitled" to the remainder in a trust fund, to release to himself all his interest in the income of the trust estate and, thereafter, the estate of the trustee was to cease and determine. In 1897, (Chap. 417, Laws of 1897), the Personal Property Law was enacted ; section 3 of which

repealed previous statutes upon the subject and read that " The right of the beneficiary to enforce the performance of a trust to receive the income of personal property, and to apply it to the use of any person, cannot be transferred by assignment or otherwise; but the right and interest of the beneficiary of any other trust in personal property may be transferred. Whenever a beneficiary in a trust for the receipt of the income of personal property is entitled to a remainder in the whole or a part of the principal fund so held in trust, subject to his beneficial estate for a life or lives, or a shorter term, he may release his interest in such income, and thereupon the estate of the trustee shall cease in that part of such principal fund to which such beneficiary has become entitled in remainder, and such trust estate merges in such remainder."

It is upon this enactment that the appellant rests her right to have the trust declared terminated. It is interesting to note, and I agree with Mr. Justice Patterson of the Appellate Division in his expression of satisfaction, that the legislature, by chapter 88 of the Laws of 1903, has restored the state of the law to its earlier condition under the Revised Statutes; whereby the interest of a beneficiary in such a trust is rendered inalienable.

The Appellate Division has denied the right of the plaintiff to a decree, declaring that the trust had terminated, upon two grounds. It was held, in the first place, that as " the legal estate in the trust fund is in the trustee, it thereby became property in his hands," of which the legislature could not, constitutionally, deprive him without his consent, and, in the second place, that, as the widow's interest was for her life, or until she remarries, it was not an absolute estate, but was conditional in its nature and, hence, not within the purview of the statute.

I am not disposed to take the view of the unconstitutionality of the act of 1893, although forcibly presented in the opinion of the very learned justice, who spoke for the court below. It impairs no contract. (*Cochran* v. *Van Surlay*, 20

Wend. 365.) Although the legal estate is in the trustee, he but possesses a naked right, which is to be exercised, not for his own benefit, but for that of another. His estate is commensurate with the trust duties imposed upon him and it ceases when they are performed, or when they are at an end. The whole beneficial proprietorship, or interest, is in the *cestui que trust*, for whom he holds the estate and who has the right to enforce the performance of the trust. At common law, when the latter had the equitable fee, he could call for the conveyance of the estate by the trustee and extinguish the trust. (Lewin's Trusts, \*486.) At common law, and under our Revised Statutes, the trustee's tenure has been under the supervisory power of courts of chancery, or of equity, and it was dependent upon conditions having no relation to any interest of his in the estate. If he has a right to commissions, it was given to him by statute, only. The argument that the constitutional guaranty against the deprivation of one's property, without due process of law, has its application to the case of this trustee is, in my opinion, unsound. That guaranty exists for the protection of the citizen's property against arbitrary legislation, and every arbitrary proceeding, which does, or may, affect it. But what is there about the right, or estate, of a trustee, which involves the idea of " property," as that term is commonly understood and as it was undoubtedly employed by the framers of our Federal and State constitutions? To the ordinary mind, and that is one of the best tests in interpreting statutes, the term " property " suggests some unrestricted, or exclusive, right to that which has been created, or acquired. It is an inherent right to the dominion over, and the beneficial enjoyment of, some valuable right, or interest. How can that be predicated of the estate of a trustee? He exercises certain powers for the sole benefit of the *cestui que trust*. He has no beneficial interest and he can be removed whenever, in the judgment of a court of equity and by the exercise of its inherent power, it becomes necessary, and independently of the instrument of his appointment. (Perry on Trusts, 276.) His right, or interest, lacks those ele-

ments of ownership, which are associated in our minds with the idea of property. In my opinion, if the conditions of the statute are met by the facts of the case, there is no constitutional difficulty in adjudging the termination of the trust.

When, however, we come to the construction of the statute of 1897, I think we shall find it difficult to make it operative upon the testamentary trust in question; a difficulty which, as I shall endeavor to point out, is to be further met with, when we consider the testamentary plan, in connection with the conditional nature of the estate created for the widow. The intention of a testator, when clear and not contravening any statute, or rule of law, must be implicitly obeyed. If it cannot be wholly effectuated, as was the case here, because the children's trust did contravene the statute, nevertheless, if the intention, apparent from the provision made for the widow and from the general design of the will, was such as to presuppose a purely conditional and, therefore, an inalienable estate in the widow, the statute should not be allowed operation. But, passing to a consideration of the statute, it is to be noticed that, while the act of 1893 was in force, no action was taken to terminate the trust; perhaps, because of the minority of the children. By its language, that act was made expressly applicable to " *any trust heretofore, or hereafter created;* " but when the legislature came to enact the Real Property Law of 1896 and the Personal Property Law of 1897, superseding prior legislation, in each enactment, it omitted those words. The omission is quite significant and should be borne in mind, when considering whether the act should be given a retroactive effect. The general rule is that every law operates prospectively and will not be given a retroactive effect; unless a contrary intent appears, in express terms, or by clear implication. Doubtless, where no constitutional security is invaded, the legislature can make its enactments retroactive and it had the power to do by the act of 1897 what it had done by that of 1893; but not having done so, we should, rather, conclude that the omission in the later act of the words " any trust heretofore or hereafter created "

was intentional and a change of the legislative mind upon
the subject of the alienability of a beneficiary's interest.    I
concede the force of the argument that the words " whenever a
beneficiary    *    *    *    is entitled to a remainder " etc., used
in the act of 1897, may possess a retroactive meaning; but
they are not strong enough, under the circumstances of their
introduction, and I prefer, rather, to infer that the legislature
intended to make the statute prospective and, when so radi-
cally changing a long existing law, did not deem it wise to
alter the conditions under which a testator had made a disposi-
tion of his estate.

Passing, then, from the consideration of the statute to that
of the will before us, we perceive, and very plainly so, that it
was drawn by some hand unskilled in the law; but, as it has
been said of a will ignorantly drawn, " if the court can pick
out the meaning, that ought to take place." ( *Upwell* v.
*Halsey*, 1 P. Wms. 651, cited in *Wright* v. *Miller*, 8 N. Y. 26.)
The testator meant that his residuary estate should be held upon
two trusts; namely, one-third thereof for his wife and two-
thirds for his son and three daughters.   He plainly expressed
himself as intending that his widow's interest in his estate
should be restricted to the enjoyment of the income of one-
third during her life, or until she remarried, and, under his
testamentary plan, it could never have been other than of that
conditional nature.  The portion of the son might become
his, absolutely, upon attaining his majority ; but the portions
of the three daughters were to be held, at all times, in trust for
their lives.   " In case of the remarriage, or the death," of his
widow, he provides that the interest of her one-third was " to be
used to increase the investments made for his children ; " that
is to say, it was to be added to the trust fund in the trustee's
hands.   It is true that the trust for the children has been
adjudged to be invalid and that they were, consequently, in
a position to assign their remainders; but that was not within
the contemplation of the testator.   When he made his will,
and when it became effective by his death, the statutes of the
state made the interest of the beneficiary of such a trust

inalienable. Whatever may have been his actual knowledge, he will be presumed to have known of the existence of a statute of the state, which made the beneficiary's interest inalienable and, thus, afforded protection to a provision, which, in theory of law, is presumed to be made for the helpless, the unfortunate, or the improvident. What this testator's idea was, we do not know, except from the will, and it may well be that this is not a case where the protection of the statute becomes important; but that is not a controlling consideration. If the scheme of the statute was such, that, if valid, the widow's interest in his estate would have been always conditional upon her remaining unmarried, it evidenced an intention, which the statute should not be permitted to override. It seems to me that every consideration, suggested by the language of this will, comes in aid of a construction, which would effectuate the testator's intention that his wife's enjoyment of an interest in his estate should be conditional and not possible of alienation.

For these reasons I advise the affirmance of the judgment, with costs to the plaintiff and to the respondent payable out of the fund.

Bartlett, J. I agree with the result reached by Judge Gray that the judgment should be affirmed. I also agree that the act of 1897, chapter 417, § 3 (Personal Property Law), has no retroactive effect; also, that the beneficiary is not completely and absolutely entitled to the whole estate, as her right to the income is conditional, it terminating if she remarries.

I, however, agree with the learned Appellate Division that the legal estate in the trust fund is in the trustee, and that it thereby becomes property in his hands, and that the legislature cannot deprive him of that property without due process of law.

The Appellate Division lays stress on the fact that the trustee has not consented to the destruction of this trust; that the only stipulation on the part of the trustee is that in the event of the court deciding that the trust has been terminated

judgment may be entered that the fund be paid over to the plaintiff. The statute provides that an express trust vests in the trustee the legal estate, subject only to the execution of the trust, and that the beneficiary takes no estate, but may enforce the performance of the trust.

I cannot, however, yield assent to the doctrine that the wills of testators may be destroyed by life tenants and remaindermen, even if trustees consent, acting under legislative sanction, on the ground that there is no one left to complain, when, in fact, the scheme of the will is ignored. It comes to this: That a testator possessed of large wealth and having several children cannot carve out trusts to meet the particular situation confronting him with the assurance that they will survive the majority of the beneficiaries if the legislature see fit to sanction their destruction. Assume the case where there are an improvident son and an extravagant and frivolous daughter; the testator, while giving to several of his children their shares of his estate absolutely, sought to perpetuate his paternal care of the improvident and extravagant by securing to them a fixed income for life by creating trusts in conformity to existing statutes. Can it be logically or legally said that a trustee, vested with the legal estate, subject to the execution of the trust, can, by legislative sanction, join with the life tenants and remaindermen and abandon the execution of the trust, the main feature of which is the care for life of those unfitted to manage their own affairs, and who presumably by the terms of the will are not permitted to alienate or dispose of the income of the trust?

The testator knew that the policy of the state is to prohibit the accumulation of property in " dead hands;" that it said to him, you must limit the duration of your trust upon two lives in being, and you take the risk of those lives falling in long before your testamentary scheme is carried out. The testator thereupon creates trusts, legal in every respect, and dies, realizing that they may be terminated at any time by the uncertainty of human life, but hoping their duration may be prolonged sufficiently to serve his purposes.

I am of opinion that a trustee vested with the legal title for the purposes of the trust cannot by his act shorten the duration thereof so long as the scheme of the will is not carried out; that his estate is property, and the Constitution protects it against legislative interference.

The rule is well stated in *Cuthbert* v. *Chauvet* (136 N. Y. 326, 328) as follows : " It is true that Courts of Chancery and other equity tribunals have always exercised a supervisory power over the management of trust estates and the conduct of trustees, but they have never, save in exceptional cases, asserted the power to dissolve a trust before the expiration of the term for which it was created.   The exceptions have been rare and have always belonged to a well-defined class where the interference of the court did not disturb or destroy the trust scheme, but was rendered necessary in order to prevent its entire failure.   Trusts which have become impossible of performance because of the existence of conditions not antici- pated or foreseen when they were created are of this character ; also marriage settlements where the marital relation has been annulled, and other kindred cases.   There was also a larger class where the court would decree dissolution of the trust upon the application of all the interested parties, but this was strictly limited to cases where the whole design and object of the trust scheme had been practically accomplished and all the interests created by it had become vested.   (2 Perry on Trusts [3d ed.], § 920 ; *Bowditch* v. *Andrew*, 8 Allen, 341.) Even then the assent of the trustee was essential to the exer- cise of jurisdiction.   In none of these cases could it be said that the plan of the trust had been defeated or the trust funds diverted from their original purpose."

A testator has the undoubted power to place the legal title of his estate in a trustee for such a legal period of time as is necessary to carry out the scheme of his will.   Any other rule would lead to the destruction of wills at the pleasure of the legislature.

In 2 Perry on Trusts (3d ed. § 920) cited by this court in *Cuthbert* v. *Chauvet* (*supra*) this language is found : " There

4

are two methods in which a trust may be terminated. It may terminate upon the accomplishment of the purposes for which it was created. When the time expires during which a trust is to exist or when the event happens upon which a trust is to cease and the trustees have performed all their duties and distributed the fund as directed, the trust is at an end.   *   *   * If a trust is created for the life of one it cannot be terminated before his death, although there are other words that imply that it may be terminated earlier."

In *Bowditch* v. *Andrew* (90 Mass. [8 Allen] 339, 341) Mr. Justice HOAR states : " The case then presents two questions : First, whether the direction to the trustee to pay over to the widow of the testator from time to time such parts of the income of his estate as should seem to her and the trustee necessary for the maintenance of his family and the support and education of his children, has become inoperative by the death of all the children, the sale of the house in which the family resided and the widow ceasing to keep house for herself ; and secondly, whether the equitable interest which was given to the children was a vested or contingent interest."

After dealing with the situation at some length, the learned judge decided this first question as follows: " And after the death of all the children without issue, the sale of the dwelling house, and the ceasing to keep house by the widow, we do not think she can be regarded as constituting the ' family,' for whose support the provision in the will was designed."

It thus appears that the scheme of this will had been carried out. It was in support of this point that the citations in Perry on Trusts and *Bowditch* v. *Andrew* were cited in *Guthbert* v. *Chauvet* (*supra*).

Perry on Trusts (§ 920) contains the following : " There can be no doubt upon principle, that, when all those who have the entire legal and beneficial interest in property agree to dispose of it in a particular manner, courts will give effect to their agreements." The learned writer states in the same section : " If a trust is created for the life of one, it cannot be terminated before his death, although there are other words that

imply that it may be terminated earlier." (Citing *Prentice* v. *Hall*, 106 Mass. 595.)

My precise point is that in the case of an incompetent or improvident child, the testator may protect his unfortunate offspring by a proper trust, and that such beneficiaries have in no legal sense the beneficial interest in the property which would enable them to join in an agreement to terminate the trust. It is not a question of a contract between the living and the dead; it is not a question whether those who have departed this life are to control the affairs of future generations; the only question is, cannot a testator, whose contracts are enforced after his death, whether favorable or otherwise to his estate, also leave behind him a legal trust, in the case I have supposed, which will continue until the scheme of his will is accomplished, provided the duration of the selected lives permits?

CULLEN, Ch. J. (dissenting). The plaintiff, under the will of her husband, who died in February, 1892, was entitled during her life or until her remarriage to the income of a trust fund consisting of one-third of his estate. Under the will as construed by a decree of the court in an action brought to determine the validity and effect of its provisions, the remainder, upon the death or remarriage of the plaintiff, was indefeasibly vested in the children of the testator and herself. The defendant is the trustee under said will. On February 11th, 1903, the remaindermen, all of whom were of age, conveyed their title and interest in the trust fund to the plaintiff who then duly released to herself as entitled to the remainder in said trust fund all her right to the income thereof. Thereafter the plaintiff demanded of the defendant a surrender of the principal of said fund, which demand was refused by the trustee on the ground that the trust had not been terminated and that a release from the plaintiff would not protect it from liability. The trustee, however, was willing to submit the question to the court and to relinquish the *corpus* of the estate if the court should decide the trust had terminated. On this

state of facts the Appellate Division held that the trust had not been terminated and that the plaintiff was not entitled to the fund.

The claim of the plaintiff is based on section 3 of the Personal Property Law (Chap. 417, Laws of 1897) as that section stood at the time of her demand. The section after prescribing that the right of a beneficiary to the income of a trust of personal property cannot be transferred by assignment or otherwise, provides: " Whenever a beneficiary in a trust for the receipt of the income of personal property is entitled to a remainder in the whole or a part of the principal fund so held in trust, subject to his beneficial estate for a life or lives, or a shorter term, he may release his interest in such income, and thereupon the estate of the trustee shall cease in that part of such principal fund to which such beneficiary has become entitled in remainder, and such trust estate merges in such remainder." The learned Appellate Division denied the plaintiff's application for a transfer of the trust fund to herself on three grounds. *First*, that if the provision of the Personal Property Law quoted applied to trusts created before the enactment of that statute or its predecessor, the law of 1893 (Chap. 452) would be unconstitutional. *Second*, that the statute should be construed as prospective only, and, therefore, not to apply to the case of the plaintiff, in whose favor the trust had been created in 1892, and, *third*, that the plaintiff did not own the life estate absolutely, but only conditionally upon her remaining unmarried. In my opinion none of, these grounds is tenable.

If it is to be regarded as an original question, I am entirely clear that the statute is constitutional as applied to trusts created before its enactment; but I deem the proposition settled by authority both in this court and in the Supreme Court of the United States. The constitutionality of the statute can be assailed only on two grounds, that it impairs the obligation of a contract and that it deprives some person of property without due process of law. Most of the decisions to which I allude were made in litigations arising out of the

sale, under acts of the legislature of this state, of certain lands devised by Mary Clark to trustees in trust to receive the rents and profits and pay the same to the testator's grandchild during his life, and upon his death to convey the land to his issue in fee, and, in default of issue, then to another grandson of the testator. The lands being vacant and returning little or no income, the legislature discharged the trustees and authorized the sale of the lands by the equitable life tenant under certain restrictions and subject to approval by the Court of Chancery. After the death of the life tenant his issue sought to recover the lands sold under these statutes. A number of actions were brought both in the courts of this state and in the Federal courts. Many objections to the validity of the sales were taken for alleged failure to comply with the requirements of the act of the legislature, none of which are material here. But the objection that the act was unconstitutional, both as impairing the obligation of a contract and as invading rights of property, was distinctly made and overruled by the Supreme Court in *Clarke* v. *Van Surlay* (15 Wend. 436) and by the Court of Errors in *Cochran* v. *Van Surlay* (20 Wend. 365). In the Court of Errors the chancellor, writing for affirmance of the Supreme Court, said: "If the laws are unconstitutional, it must be either because they impair the validity of a contract, and thus conflict with the Constitution of the United States, or because they are inconsistent with the State Constitution in taking the property of infants and applying it to purposes not previously authorized by law, and which could not benefit them. There is not any contract which has been violated in this case by the legislature, within the meaning of that clause of the Constitution of the United States which prohibits the state legislatures from passing any laws impairing the obligation of contracts." Senator VERPLANCK, while voting for reversal of the judgment below on the ground that the statute had not been complied with, said: "I concur with the Supreme Court in supporting the constitutionality of the acts under which the sale, now impeached, was made. * * * But a will absolute in its terms, and

unconditional, cannot, by any stretch of terms within the limits of legal or of ordinary language, be termed a contract; still less can an estate absolutely vested under a decree, or if contingent, yet contingent only on the casualities of life, not on any condition to be performed, be considered as an executed contract." In *Towle* v. *Forney* (14 N. Y. 423) this court again upheld the validity of the sales made under the statutes referred to. The litigation in the Federal courts has a different history. The case first came before the Supreme Court of the United States in *Williamson* v. *Berry* (2 How. [U. S.] 495) on a certificate of division of opinion between the judges holding the Circuit Court. The judges of the Circuit Court agreed that the statutes were constitutional, so that question was not presented to the Supreme Court, which court held the sales bad for failure to comply with the requirements of the statute. The case again went to the Supreme Court, (reported under the title of *Suydam* v. *Williamson*, 24 How. [U. S.] 427) which retracted its former ruling and held that on a question of title it should follow the law as declared by the state courts. So far the question of the constitutionality of the statute had not been presented to the Supreme Court. The case, however, was again taken to that court and is reported in 6 Wallace, page 723. There the objection was distinctly taken and overruled that the discharge of the trustees by the legislature of New York contravened the provision of the Federal Constitution prohibiting the enactment of any law impairing the obligation of a contract.

Though the will of the plaintiff's husband did not constitute a contract within the provisions of the Federal Constitution, no rights of property acquired thereunder could be divested by an act of the legislature. Such a statute would be a deprivation of property without due process of law and violate both the Federal Constitution and our own. Every beneficial interest in the trust fund is now vested in the plaintiff. The remainder, upon her death or remarriage, in the hands of her children, was, at all times, under our law, alienable, devisable and descendible, and those children have conveyed to her. As the law stood

at the time of the creation of the trust she could not alienate or anticipate her income and it was not liable to creditors save for any excess beyond what was necessary for her support. These provisions of law were for the benefit and protection of the equitable life tenant solely.   As she wishes to be relieved from these restrictions and the legislature grants her that privilege, who else has ground for complaint?   In *Leggett* v. *Hunter* (19 N. Y. 445) it was held (460): " It was certainly competent for the legislature to relieve the daughters from the prohibition contained in the 63rd section of the statute (1 R. S. 730), that no person beneficially interested in a trust for the receipt of the rents and profits of lands, can assign or in any manner dispose of such interest.   The acts already referred to provide for the conveyance of the rights of the daughters, and obviate any objection under the section just cited.   So far then they are constitutional and valid."   In *Cochran* v. *Van Surlay* (*supra*) it was said by the chancellor: " By the first section of the Act of March, 1815, the equitable life estate of T. B. Clark in the premises was converted into a legal estate, which was perfectly proper, as its conversion from an equitable to a legal estate could not affect the rights or interests of any other person."   The learned court below following *Oviatt* v. *Hopkins* (20 App. Div. 168) placed its decision on the ground that the statute operated to deprive the trustee of his property and, therefore, was unconstitutional. It is doubtless true that oftentimes a trustee may assert his title to property with the same force and effect as an individual might, that is to say, when he represents beneficial interests which it is his duty to protect.   The case before us is of an entirely different character.   He is not asserting a right to protect those for whose benefit the trust was created, but in hostility to them.   The question, therefore, is, has a trustee any such personal, not representative, right to the mere possession of the trust fund as to constitute property within the provisions of the State and Federal Constitutions?   Of that possession he cannot avail himself in any respect for his own advantage.   His sole right is

to his commissions if he does his work properly. The right
to such commissions in this case, however, is solely statu-
tory, no provision having been made therefor in the will
(*Matter of Schell*, 53 N. Y. 263), and the statute may at any
time be amended or repealed. Moreover, there is no difficulty
in obviating any question of this kind by allowing the trustee
commissions when he turns over the property. The tenure
by a trustee of his office clearly shows that he has no property
right therein. He may be removed at any time by a court of
equity for causes entirely insufficient to justify depriving one
of his property. "It may be stated generally that if the con-
duct or circumstances of trustees is such as to render it very
inconvenient, improper or inexpedient for them to continue
in the trust the court will exercise its discretion and relieve
them and appoint others in their place, as where the trustees
* * * so disagreed among themselves that they could not
act, or where co-trustees refused to act with one of their num-
ber." (Perry on Trusts, 276.) In *Matter of Morgan* (63
Barb. 621) and in *Deraismes* v. *Dunham* (22 Hun, 86) the
court removed a trustee because of the hostility existing
between him and his co-trustees without entering into the
merits of the controversy between the parties. Under our
law when the position of trustee becomes vacant for any
reason the trust devolves upon the Supreme Court. It
seems to me, in view of these principles, idle to argue that a
trustee has personally any property right in the trust fund.
He is in reality the mere custodian of the fund for the pur-
pose of executing the trust, though in dealing with third par-
ties the law vests the legal title in him. Finally it may be
said that at common law such trusts as the one before us, the
income under that law being alienable except in the case of a
trust for a married woman, could be terminated by the decree
of a court of equity on the consent of all parties in interest
where those interests were vested and indefeasible (Perry on
Trusts, § 920), and that it is the provision of our Revised
Statutes rendering the income inalienable that has changed
the law in this state. (*Lent* v. *Howard*, 89 N. Y. 169, 172.)

It was casually remarked by this court in *Cuthbert* v. *Chauvet* (136 N. Y. 326, 328) that the assent of the trustee was essential to the exercise by a court of equity of jurisdiction to terminate a trust.   The statement does not seem justified by the authorities cited.   (2 Perry on Trusts, § 920 ; *Bowditch* v. *Andrew*, 8 Allen, 341.)   On the contrary, it seems settled in Massachusetts that a trust will not be continued for the benefit of the trustee (*Slater* v. *Hurlbut*, 146 Mass. 308) ; but that the beneficiaries may terminate the trust.   (See, also, *Whall* v. *Converse*, 146 Mass. 345 ; *Inches* v. *Hill*, 106 Mass. 575 ; *Smith* v. *Harrington*, 4 Allen, 566.)   There has, in the later cases, been a disposition to refuse to terminate a trust where there is a provision against anticipation or alienation by the *cestui que trust*, but this limitation, not the assent of the trustee, is the controlling factor affecting the action of the courts.   The rule is the same in England, that except where the income is inalienable the trustee can be compelled to convey.   (Lewin on Trusts, XXVI, p. 674 *et seq.*)   It must also be borne in mind that this court in the *Chauvet* case was discussing the power of a court of equity to decree a termination of a trust without legislative authority, not the power of the legislature to provide for the termination of trusts, an entirely different question.   As to this branch of the case I concur in the discussion of my brother GRAY.

In an opinion delivered on this appeal by Judge BARTLETT a ground is taken much in advance of that of the learned Appellate Division.   It is asserted that even with the consent of both trustee and beneficiaries the legislature cannot authorize the abrogation of the trust.   It is argued that the legislature having at the time of the testator's decease provided by law for the creation of trusts, authority subsequently given by the legislature to the trustee to unite with the beneficiaries in disposing of the trust estate would be taking property without due process of law.   In answer to this it may be first suggested that the retention of the property by the trustee would be wholly inoperative to prevent the evils anticipated by the learned judge, the dissipation by an improvident or

extravagant child of his support, if such child were allowed
to anticipate or sell the income of the trust fund.   Therefore,
it is incumbent to go further and to establish that it was
beyond the power of the legislature as to existing trusts to
repeal the law which forbade the alienation or disposition of
the income of a beneficiary, and I understand this to be the
position my brother BARTLETT assumes.   It does not seem to
me possible that any person can have a property right in a
limitation that another shall not anticipate or alienate his
income when he can in no event succeed to what the other
may leave unexpended.   But waiving this and accepting what
seems to me the entirely untenable assumption that the tes-
tator's will operated as a contract either with his widow or
with the trustee, or with both, that the widow should not
alienate or anticipate her income, the obligations of which
contract the legislature could not impair, the question remains,
who has succeeded to those contract rights?   Certainly when
the testator died he took with him from this world nothing of
property or property rights.   All his property, including the
rights acquired under the supposed contract, at once passed
either to his widow and next of kin, and heirs at law, or to his
legatees and devisees under his will, who are the very persons
upon whom the burden of fulfilling the obligations of that
contract rested.   To speak accurately, as the will became
operative only on the testator's death, the right to enforce the
trust never vested in him, but accrued first and solely to the
beneficiaries.   A man may convey property to a corporation
on condition that the property shall be used only as a church,
and the corporation may covenant to that effect, but after his
death his heir at law or devisee may release the condition and
covenant and the property be used for a theatre.   The argu-
ment of Judge BARTLETT's opinion seems necessarily to lead
to the proposition that there can be a property right in the
dead beyond the power of all the living interested therein to
dispose of though with the authority of the legislature.   I
should be the last to deny that a wise government will prop-
erly respect to some extent the wishes of preceding genera-

tions even in regard to the present management of estates that they have left. That is a matter solely of public policy to be determined by the legislature with reference to how far compliance with those wishes will affect favorably or unfavorably the welfare of the state. It is a subject with which the courts have no concern. When, however, a statute is assailed as unconstitutional in taking property without due process of law, there must be pointed out some person at present existing or that may hereafter exist whose rights are invaded. A conveys land to B in trust to apply the rents and profits to his (A's) wife C during life, and on her death to his only child D in fee. All the parties are adults and all interests are indefeasibly vested. Thereafter the legislature enacts that all the parties named, A, B, C and D, may unite in selling the property and in terminating the trust. There is no inhibition in the Constitution against the destruction of trusts or against setting aside wills. There is, however, a provision that no *person* shall be deprived of property without due process of law and, therefore, if the effect of the abrogation of the trust is to deprive any one of a property right the statute would be unconstitutional and void. But *injuria non fit volenti* and it is entirely plain that where every one in interest consents, no one is deprived of any property. If that is not so, who is it whose rights are invaded? Name the *person*. Now I shall assume for the discussion only that the right of A to have the trust enforced is absolute, and that the legislature could not authorize its termination without his consent. A dies leaving the other parties surviving. This right of A being property (if not property, it is not within the constitutional provision under discussion) on his death must have devolved on somebody with as plenary power as A possessed in his lifetime to assent or to refuse assent to the changed legislation. If not, then there has remained in A, though dead, some property right. Under our notions as to the devolution of property on the death of the owner it is impossible that there should be vested in the dead any property right within the constitutional safeguards, State or Federal. There are certain rights, such as a cause

of action for personal injuries, that do not pass on the death
of the holder to his representatives or successors, but in all
such cases the right itself ceases and ends.   This subject
received some attention in the famous *Dartmouth College
Case* (4 Wheaton, 518), where Chief Justice MARSHALL said
that the question upon whom the contract rights acquired by
the founders of the college devolved had given the court
more trouble than all the questions in that case argued by
counsel.   It was held that those rights passed to the corpora-
tion and it was decided, not that the original charter granted
by the crown to Doctor Wheelock and his associates could
not be altered, but that it could not be altered without the
consent of the corporation.

The next position of the learned court below is that the
Personal Property Law should not be construed retrospec-
tively so as to include the case of a trust executed before its
enactment.   To bring the case of the plaintiff within the sec-
tion it is not necessary to construe it retrospectively.   The
section does not deal with the creation of trusts, but with the
existing tenure of property.   The provision is " whenever a
beneficiary in a trust for the receipt of the income of personal
property *is* entitled to a remainder in the whole or a part of
the principal fund so held in trust," etc., he may by a certain
method abrogate the trust.   The plaintiff at the time of the
enactment of the statute was entitled to the income of prop-
erty held in trust and thereafter became entitled to the remain-
der in the *corpus* and thereupon executed the release pre-
scribed by the statute to terminate the trust.   She sought to
terminate the trust only after the statute had authorized her
so to do, and in giving effect to that action in her case I see
nothing of a retrospective character.   Nor is there any argu-
ment to be drawn from the change of phraseology between
the present law and that of 1893 which preceded it, in the
omission of the words " heretofore and hereafter created."
The new law is not a mere re-enactment of the old law with
those words omitted, but the whole verbiage of the old law,
which was cumbrous and prolix in the extreme, has been

abandoned and a single short provision substituted for it. The construction given to the present law by the learned court below would lead to this incongruous result. From the enactment of the law of 1893 to its repeal by the Personal Property Law, unquestionably, trusts created during that period were subject to be abrogated by a life tenant owning the remainder. On what principle, if the policy of the legislature authorizing the abrogation of such trusts was to be continued at all, would trusts created since the law of 1893 be omitted from the operation of the new statute? If the statute impaired no vested right and it was the interest of the equitable life tenant that a loan was effected by its provisions, how is it at all material at what time the trust was created?

Lastly, the learned court below thought the plaintiff did not fall within the statute because her right to the income was conditional on her remaining unmarried, and referred to the case of *Matter of United States Trust Company* (175 N. Y. 304). In that case the beneficiary was not entitled either to the whole or any definite part of the income of the trust fund, but only such portion thereof as might be necessary for his support, which would vary from time to time. In the present case the plaintiff is entitled to the whole of the income as long as she remains unmarried, and the condition against remarriage is a limitation solely on the time of her enjoyment of it. The statute in terms applies to the case of an income "for life or lives or a shorter term;" as the plaintiff must marry during her lifetime, if at all, a bequest *dum viduitate* is necessarily either for life or for a shorter term.

It was said below: "The intention of the testator is that she shall cease to be entitled to the income on her remarriage. That intention, lawful, enforcible and subject to no limitation at the time the will was made, cannot be destroyed. If effect were given to the statute and the fund were transferred to the widow she might marry the next day and thus defeat the plain testamentary intention of her husband." I think that the effect of a statute in a particular case should not control its construction, though doubtless the result of a particular con-

struction in a whole class of cases is justly deemed a potent factor in determining the proper interpretation of the law. I doubt, however, whether the decision of the Appellate Division in this case does conduce to effectuate the desire of the testator, by no means an uncommon one, that his widow should remain unmarried. Under that decision the plaintiff cannot now take the principal of the property, but the day on which she marries the trust terminates and under the assignment from her children to her she is entitled to the whole fund. The title of the present case on appeal would seem to indicate that this pecuniary temptation has as yet proved insufficient to induce the plaintiff to thrust aside the memory of her deceased husband.

The judgment appealed from should be reversed and judgment awarded for the plaintiff for the delivery of the fund less the commissions thereon due the defendant.

O'BRIEN, J., concurs with GRAY, J.; HAIGHT and WERNER, JJ., concur with GRAY, J., in result on last two grounds; VANN, J., concurs with BARTLETT, J.; CULLEN, Ch. J., reads dissenting opinion.

Judgment affirmed.