Hitohcock, J.
It will be seen by the bill of exceptions that the Mechanics and Traders’ Bank of Cincinnati was an unauthorized banking company, if not within the act of 1816, prohibiting “ the issuing and circulating unauthorized bank paper,” still within the law further to amend that act, passed on January 27, 1839. Swan’s Stat. 140. Whether, by its action, it was brought within the former law, is not very material, so long as it is within the latter. By section 9 of the act of 1816, all bonds, notes, bills, or contracts, negotiable or payable at such bank, or made for the purpose of being discounted at such bank, are declared to be void. This law was in force at the time the note now in suit was made, and the note was made for the purpose of being discounted, and was actually discounted at the Mechanics and Traders’ Bank. For this reason it is insisted by defendant’s counsel that it is void, and that no action can be sustained upon it. If the question depended alone upon the law of 1816, the position assumed by counsel for defendant would not bo controverted.
*But on March 8, 1845, the general assembly passed an act entitled an act “ to authorize William Lewis, trustee of the Mechanics and Traders’ Bank of Cincinnati, to commence and prosecute suits against the debtors of said bank.” 43 Ohio L. 308.
In the preamble of the act it is recited, that certain persons associated together in the year 1838, by the name of the Mechanics and Traders’ Bank of Cincinnati, for the purpose of carrying on business according to the articles of the association, in the city of Cincinnati, and that many persons are indebted to the association by bonds, bills, notes, etc., and that owing to the large number of the associates, and to doubts entertained as to the right of said associates to recover the debts so due, “ whereby the association is unable to meet its own obligations, and whereas, said Mechanics and Traders’ Bank has ceased to transact business, and for the *297 purpose of winding up its affairs and liquidating its debts, has assigned its assets to Wm. Lewis as trustee, for the benefit of its creditors and stockholders,” etc.
In section 1, authority is given to Lewis, as such trustee, in his own name to commence and prosecute all necessary suits in law and chancery against any and all persons, etc., who are indebted to said bank, and to receive in such suits the amount which may be found due and owing; and it is further provided, “that suits may. in like manner, be prosecuted upon any notes, bonds, or bills, and all parties thereto, which may have been payable, or negotiated to said institution or any authorized officer thereof, and also against all delinquent stockholders of said institution, for the balance due upon their subscription for stock in such company.”
By section 4 of the act, it is declared that “ it shall not be lawful for the defendant or defendants ” in such suit, “ to plead, set up, or insist upon, in defense, that the notes, bonds, bills, or other written evidences of such indebtedness, are void on account of being contracts against, or in Violation of any statute law of this state, or on account of their being contrary to public policy.”
There can be no doubt of the intention of the legislature in the enactment of this law ; and if within the scope of their constitutional power, it is a law which can be enforced, being in accordance with the strict principles of justice. It provides a mode by which an insolvent association may be enabled, in part, to pay its own debts, by authorizing it to collect debts due to it. It is, in fact, a law peculiarly i'or the benefit of the creditors of the institution. And it requires nothing from the debtors, which they would refuse to perform, if they had a due and proper sense of moral obligation. For, although under the law of 1816 contracts made with similar institutions are declared to be void; still there is nothing immoral in such contracts, although they were supposed to be inconsistent with public policy.
It is urged, however, that this law is unconstitutional and void, inasmuch as the effect of it is to give validity to contracts which were, by the law in force when they were entered into, null and void. There was a time when it was dangerous for the courts of this state to inquire as to the constitutionality of legislative enactments. And the journals of our legislature will show that at least *298 two judges have been impeached for this high offense. But we have fallen upon different times. Supremacy seems to bo claimed for the court, instead of the general assembly. And scarce a case has been presented to us, dependent upon legislative enactments, in which it is not claimed that the constitution has been violated. I am no advocate of legislative supremacy, nor do I doubt the power and the duty of this court, in a proper case, to declare a law unconstitutional. I do not believe, however, that the general assembly will over pass a law with the intention of violating the constitution. Nor can I ever consent to declare one of their acts void on this account, unless it is palpably both against the letter and spirit of that instrument. So long as there is any, the least doubt upon the subject, the law must be enforced.
*Now, what provision of the constitution of Ohio is violated by this law? Certainly it violates no contract. Its very object is, that contracts may be enforced. But it is said to be a retrospective law, or a law retrospective in its character. I find nothing in the constitution prohibiting the enactment of retrospective laws. The enactment of ex post facto laws is prohibited, not retrospective. Such laws may be impolitic, but with this, as a judgo, I have nothing to do. This law interferes with no vested rights. It merely compels men to do justice. Still, it is my duty to say that I have doubts of the propriety of enforcing laws similar to this, but have at length yielded those doubts in a ease decided at the present term of the court. I allude to the case of Johnson v. Bentley et al.
That was a suit brought against the defendants, charging them, as stockholders of an unauthorized bank, to receive the amount of certain bills and notes put in circulation by the company as money, which notes and bills were put in circulation previous to March, 1840. It will be remembered that, by section 23 of the act of January 28,1824, “ regulating judicial proceedings where banks and bankers are parties,” etc., it is provided “ that no action shall be brought upon any notes or bills hereafter issued by any bank, banker, or bankers, and intended for circulation;” but all such notes and bills “shall be held and taken in all courts as absolutely void.” This applies to unincorporated banks alone. The phraseology of this section is somewhat different from that used in section 9, before cited, of the act of 1816, which declares notes or bonds given for the purpose of being dis *299 counted at an unauthorized bank null and void, but there is no difference in substance and effect. The act of 1824 declares that all notes and bills put in circulation by such bank or banker “shall be held and taken in all courts as absolutely void.” If a note or bill is to be held absolutely void by all courts, is it not void everywhere? There certainly is no other tribunal which can enforce its payment. And well may it be *said that a contract is void which can not be enforced. The section further declares that no suit or action shall be brought upon such note or bill. Now, taking these two provisions of law together, and I can perceive no difference between a note or bill given to or issued by an authorized bank—all were void.
By the act of March 23, 1840, this provision of the act of 1824 was repealed. Swan’s Stat. 141. And the court held in the before-cited ease of Johnson v. Bentley et al., that inasmuch as this provision was repealed, the bills and notes were left as under the law of 1816, and that although void by the law of 1824, still that the plaintiffs could recover—in other words, that the repeal of the law of 1824 set up or gave validity to notes and bills which were uncollectible when issued. Such, at least, is the effect of the decision.
Having so held, I can not see with what propriety we can refuse to enforce the law of 1845, authorizing. Lewis to sue as trustee. The only difference, as it seems to me, is, that this law operates in favor of those who have acted as unauthorized bankers, or rather in favor of their creditors, while the other, in its effects, operates against them. Apply the principle to the case now under consideration, and see the operation. At the time the Mechanics and Traders’ Bank issued their bills for circulation, those bills wore void under the act of 1824. In 1840 the general assembly repealed this provision in the act of 1824; and we say, according to the decision in Johnson v. Bentley et al., that the members of this association are liable jointly and severally for the whole amount of bills which they have put in circulation. The same general assembly, by another Jaw passed in 1845, authorizes this association, through a trustee, to sue for and collect debts due to it, and prohibits the debtors from insisting, in defense, that the written evidences of indebtedness were void. Shall we say this latter enactment is void ? It seems to me we can not, unless we disregard the oath that is upon us to adminis *300 ter equal ^justice to all. Admitting the validity of this act of 1845, a question is made whether, inasmuch as tho defendant in error was a member of this association, or partnership, an action at law ean be sustained against him by tho trustee. The court of common pleas held that such action could not be sustained, and so charged tho jury. This is ono of the errors complained of.
There is no doubt of the rule upon this point, as it exists at common law. Ordinarily, partners can not, in their partnership name, sue a copartner for a debt due the firm, in a court of law, but must resort to chancery. But wo suppose that so far as this association is concerned, that this rule is changed by the act of 1845, before referred to, and that tho effect of that act is to authorize the trustee to prosecute suits against all the debtors of the association, whether stockholders or not, in the same manner as if the association had been incorporated, and its concerns had been placed in like manner, in the hands of a trustee. To adopt the construction contended for by defendant’s counsel, would almost, if not entirely, defeat the objects of the law. If the law is sustained, and we think it must be, it should be so construed as to effect, not to defeat those objects. -And if so construed, it may operate to afford some relief to the creditors of this institution, while it can do no injustice to its debtors.
UjDon full examination, we are of opinion that the court of common pleas erred in deciding that the act of 1845 was void, and in holding that a suit at law could not be sustained to enforce the collection of a debt due from a member of the association.
For these errors, without examining the others assigned, tho judgment of the court of common pleas is reversed, with costs; and the case remanded for further proceedings