BREARLEY SCHOOL, LIMITED, Respondent, *v.* BEVERLEY WARD, Appellant.

Constitutional law — statute lessening exemptions from execution not in violation of constitutional provision against the enactment of laws impairing the obligation of contracts — constitutionality of statute permitting issuing of execution against income from a trust fund created by a will probated before the enactment of the statute.

The mere fact that a statute is retrospective or retroactive is not a conclusive objection to its validity under the Federal Constitution. It is not all retrospective laws that are forbidden by section 10 of article 1 of the Federal Constitution, but only such as impair the obligation of a contract.

The difference between a statute *extending* exemptions from execution and *lessening* exemptions from execution is fundamental, and the constitutional provision against laws impairing the obligation of contracts has no application to a statute diminishing such exemptions.

It is a general rule of constitutional law that a citizen has no vested right in statutory privileges and exemptions. Such a statute is not a contract between the judgment debtor and the state, and hence an amendment thereof altering the exemptions by lessening them does not impair the obligation of a contract.

The state retains the right, which exists in regard to remedial legislation generally, to change the remedy in favor of the creditor of a *cestui que trust*. Hence, an execution under section 1391 of the Code of Civil Procedure, as amended by chapter 148 of the Laws of 1908, taking effect September 1, 1908, can be lawfully issued against ten per cent of the income derived from a trust fund, although the fund was created by a will probated prior to the passage of that act.

*Brearley School* v. *Ward*, 138 App. Div. 833, affirmed.

(Argued November 15, 1910; decided March 28, 1911.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 10, 1910, reversing a determination of the Appellate Term which affirmed an order of the City Court of the city of New York denying a motion by the plaintiff for an order directing the issuance of an execution against ten per cent of the income of a trust fund held by the Equitable Trust Company of New York, which income was due, or thereafter to become due, to the defendant.

The following question was certified : " Q. Can an execution under section 1391 of the Code of Civil Procedure, as amended by chapter 148 of of the Laws of 1908, taking effect September 1, 1908, be lawfully issued against the income from a trust fund created by a will probated prior to the passage of the act in question ? "

The facts, so far as material, are stated in the opinion.

*William G. Chittick* and *Louis W. Dinkelspiel* for appellant. In the absence of express language authorizing retroaction, statutes should be construed so as to have prospective effect and be operative only in the future and upon future transactions. (*Rhodes* v. *S. & H. Co.*, 193 N. Y. 223; *G. S. Bank* v. *Suspension Bridge*, 159 N. Y. 362; *Matter of Van Kleck*, 121 N. Y. 701.) If the trustees of Montagnie Ward, by virtue of a statute enacted in 1908, are compelled to pay a part of the income to a person other than as designated in the will, the performance of the contractual obligation which the trustee has bound himself to carry out will be arrested, and by mere force of a legislative enactment property would be taken from the trustee's lawful possession in defiance of the terms of the trust, and violative of the contractual obligation of the trustee. (*People* v. *O'Brien*, 111 N. Y. 1, 63; *McLaren* v. *Pennington*, 1 Paige, 102; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; 1 R. S. 729, 730, §§ 60, 63; *Stringer* v. *Young*, 191 N. Y. 157; *Metcalfe* v. *Union Trust Co.*, 181 N. Y. 39; *Matter of Muller*, 110 N. Y. 216; *Cuthbert* v. *Chauvet*, 136 N. Y. 326; *Lewisohn*

v. *Henry*, 179 N. Y. 352; *Romaine* v. *Chauncey*, 129 N. Y. 566; *Walker* v. *Walker*, 155 N. Y. 77; *Livingston* v. *Livingston*, 173 N. Y. 377.) Trusts are construed in connection with laws existing at the time of their creation and are necessarily subject to them. (*Spindle* v. *Shreve*, 111 U. S. 542; *Matter of Craig*, 97 App. Div. 289; 181 N. Y. 551; Cooley on Const. Lim. [7th ed.] 511; *Bull* v. *Case*, 165 N. Y. 528; *Matter of Vanderbilt*, 172 N. Y. 69; *Matter of Pell*, 171 N. Y. 48; *Matter of Seaman*, 147 N. Y. 701; *Brevoort* v. *Grace*, 53 N. Y. 245; *Douglas* v. *Cruger*, 80 N. Y. 15; *Muhlker* v. *Harlem R. R. Co.*, 197 U. S. 544; *People ex rel. Roosevelt Hospital* v. *Raymond*, 194 N. Y. 198.)

*Grenville Clark* for respondent. If the income from the trust funds is due and owing to the judgment debtor or shall become due and owing to him, the section by its terms applies, irrespective of whether the judgment debtor acquired his interest in the trust fund prior to or after the passage of the section. (*Laird* v. *Carton*, 196 N. Y. 169.) The defendant's former privilege of keeping his income beyond the reach of creditors was a gratuitous exemption on which no vested rights can be predicated. (*Bryan* v. *Knickerbocker*, 1 Barb. Ch. 409; *Leggett* v. *Perkins*, 2 N. Y. 297; *Williams* v. *Thorn*, 70 N. Y. 270; *Tolles* v. *Wood*, 99 N. Y. 616; *Morse* v. *Goold*, 11 N. Y. 281; *Bronson* v. *Kinzie*, 1 How. [U. S.] 311.) A gratuitous statutory exemption may be constitutionally modified. (*Morse* v. *Goold*, 11 N. Y. 281; *People* v. *Roper*, 35 N. Y. 629; *Kittel* v. *Domeyer*, 70 App. Div. 134; 175 N. Y. 205; *Bull* v. *Conroe*, 13 Wis. 233; *Leak* v. *Gay*, 107 N. C. 469; *Cusic* v. *Douglass*, 87 Am. Dec. 459; *Sparger* v. *Compton*, 54 Ga. 355; *Harris* v. *Glenn*, 56 Ga. 94; *Massey* v. *Womble*, 69 Miss. 347; *Gatlin* v. *Walton*, 60 N. C. 325.)

WILLARD BARTLETT, J. In this action, which was brought in the City Court of New York, the plaintiff on September 27, 1909, recovered judgment against the defendant for $727.63, upon which an execution was duly issued and

returned unsatisfied.   Thereupon the plaintiff on December 7, 1909, moved in the City Court for leave to issue an execution against ten per cent of the income derived by the judgment debtor from a testamentary trust established in his favor by the will of one Montagnie Ward, which was admitted to probate on the 6th day of December, 1879.

This application was based upon an amendment to section 1391 of the Code of Civil Procedure, which took effect on September 1, 1908.   That section as then amended provides, among other things, that where a judgment has been recovered and an execution thereon has been returned unsatisfied, and where any wages, debts, earnings, salary, *income from trust funds* or profits are due and owing to the judgment debtor to the amount of $12 or more per week the judgment creditor may apply to the court in which the judgment was recovered, and upon satisfactory proof of such facts the court must order an execution to issue against the wages, debt, earnings, salary, income from trust funds or profits of the judgment debtor.   On presentation of the execution to the person from whom the wages, debts, earnings, salary or income from trust funds or profits are due, such execution becomes a lien and remains a continuing levy to the amount specified therein, which shall not exceed ten per cent thereof until the execution and the expenses thereof are duly satisfied and paid.   The appellant concedes that section 1391 as thus amended is applicable to the income from trusts which have come into being since the amendment, but contends that it cannot be applied to income from trusts previously created because if so applied it would be unconstitutional as impairing the obligation of a contract and as depriving the beneficiary of the trust of a vested right.

It is pertinent to inquire in the first place to what extent the income from trust funds was subject to the claims of creditors of the beneficiary of the trust on September 1, 1908, when the amendment to section 1391 of the Code of Civil Procedure took effect.   The rights of such creditors as against the trust income were then prescribed by a provision of the

Real Property Law and certain sections of the Code of Civil
Procedure.   The Real Property Law provides as follows :
" Where a trust is created to receive the rents and profits of
real property, and no valid direction for accumulation is given,
the surplus of such rents and profits, beyond the sum neces-
sary for the education and support of the beneficiary, shall be
liable to the claims of his creditors in the same manner as
other personal property, which cannot be reached by execu-
tion." (Real Property Law [chap. 547, Laws of 1896], § 78,
formerly 1 R. S. 729, § 57 ;  Real Property Law [chap. 52,
Laws of 1909], § 98.)  The Code of Civil Procedure, in
chapter 15, title 4, article 1, entitled Judgment Creditor's
Action, then provided and now provides for an action by a
judgment creditor against a judgment debtor or other person
to compel the discovery of any thing in action or other prop-
erty belonging to the judgment debtor, and of any money,
thing in action, or other property due to him or held in trust
for him ; but this provision was not and is not applicable to a
case where the trust has been created by a person other than
the judgment debtor.   (Code of Civil Procedure, §§ 1871,
1879.)  As the trust in the present case was created by a third
party, it does not fall within the purview of section 1871 of
the Code, so that when the amendment to section 1391 took
effect on September 1, 1908, the provision of the Real Prop-
erty Law which has been quoted was the only statutory regu-
lation of the subject which has any application to the facts
in the present litigation.   In the statutory revision of 1909
the consolidators have appended a note to section 98 of the
Real Property Law which is of some interest in this discus-
sion.   It is as follows :  " The Code of Civil Procedure
(§ 1391), as conceded, has put an end to a large 'spendthrift
trust' in this state.   *   *   *   The effect of § 1391 of the
Code is to permit certain creditors of beneficiaries of trusts
created under the third subdivision of § 76 (§ 96 of present
law) of the former Real Property Law, to have execution
on their judgments.   So important a reform in our domestic
law of trusts deserves to be called to the attention of lawyers

and laymen reading the statute on Uses and Trusts and such a clause might be added to this section. It ought not to be left obscurely contained in a long section of the Code of Civil Procedure."

In *Laird* v. *Carton* (196 N. Y. 169) we held that the amendment of 1908 to section 1391 of the Code of Civil Procedure applied to judgments for wages which had been rendered 'prior to the time when it took effect as .well as to judgments subsequently obtained. It seems equally clear that this amendment, so far as it relates to the income from trust funds, was intended to apply to then existing trusts as well as to trusts which should thereafter be established. The argument in behalf of the appellant is that if this intent of the legislature is carried into effect it will render the amendment unconstitutional for the reasons which have been stated. It is also argued in the dissenting opinion in the Appellate Division that if the amendment in question be regarded as operative upon existing trusts it is unconstitutional because it deprives one of his property without due process of law. This view is based on the proposition that as soon as the trust estate was created the beneficiary became entitled to the whole of the income derived therefrom and the legislature could not take away from him any part thereof.

The mere fact that a statute is retrospective or retroactive is not a conclusive objection to its validity under the Federal Constitution. "It is not all retrospective laws, however," says Mr. Justice MILLER, "that are forbidden by this clause [Art. I, section 10] of the Constitution, but only such as impair the obligation of a contract. *Ex post facto* laws are also forbidden in the same clause, but * * * that term is only applied to criminal laws and procedure and has no reference to contracts. There is a large class of retrospective legislation which is constitutional, not inconsistent with the principles above laid down, and sometimes necessary and proper, relating to rights not dependent upon contract or affecting the individual by increasing his liability to a criminal prosecution." (Miller on the Constitution of the United States, 536 ; *Satterlee*

v. *Matthewson*, 2 Peters, 380.)   The theory of the dissenting opinion below is that the beneficiary of a trust fund created by a third party whose income therefrom is wholly exempt from execution at the time of the creation of the trust has a constitutional right which prohibits the legislature from making any part of such income applicable to the payment of his debts; in other words, that he has a constitutional right that the law thus exempting trust incomes from the claims of his creditors shall never be changed so as to affect him.   This theory is only tenable upon the assumption that the state has entered into a contract with the *cestui que.trust* to that effect. Certainly there is no such contract between the creator of the trust and the trustee or the beneficiary.   The creator of the trust has simply appropriated a portion of his property to the use of the beneficiary.   The trustee merely undertakes to pay over the income as directed, provided the law of the land permits him to do so.   He enters into no engagement to withhold the trust income from the creditors of the beneficiary who may have a lawful claim against the same.   If there is any contract in the case, therefore, protected by the constitutional provision it must be an implied agreement by the state that the law shall not be changed in the respect indicated.

The provisions of law which afford protection to the beneficiaries of trusts are practically simply statutes of exemption. The Revised Statutes (now the Real Property Law) by providing that the surplus income of real estate should be liable in equity for the claims of the creditors of the beneficiary provided by necessary implication that all of the income which was necessary for the education and support of the person for whose benefit the trust was created should be exempt from liability for his debts.   This rule of the Revised Statutes implying a like exemption was extended by judicial construction to trusts of personal as well as trusts of real estate.   (*Williams* v. *Thorn*, 70 N. Y. 270.)   The exemption, to the extent of ten per cent of the trust income, has now been repealed by the Code amendment in question, in cases where such trust income equals or exceeds twelve dol-

lars a week; or perhaps it is more accurate to say the
exemption has been lessened to that extent.

The difference between a statute *extending* exemptions
from execution and *lessening* exemptions from execution is
fundamental.   Some confusion has arisen from the failure to
emphasize this distinction in discussions as to the constitu-
tionality of exemption laws.   Mr. Justice MILLER in his
treatise on the Constitution of the United States, speaking of
state laws enlarging exemptions from execution so as to
include homesteads, says: " So far as these laws, or any of
them, have had the effect to operate upon contracts in exist-
ence when they were passed they have been uniformly held
by the Supreme Court of the United States, as well as by
nearly all the other courts before whom the question has
come, to be forbidden by the clause of the Constitution we
are now considering.   To the extent that they impair the
obligation of contracts, or hinder the creditor from collecting
his debt, they benefit the debtor and place him in a better
position at the expense of the creditor and so are repugnant
to this clause of the Constitution.   It matters not whether
the sum involved be large or small, every law which has this
effect in regard to past contracts, or those in existence when
the law took effect, is void."   (Miller on Const. of U. S. pp.
547, 548.)   This doctrine is unquestionable as applied to stat-
utes *enlarging* exemptions; but the language quoted does
not sustain the proposition that *any change* in an exemption
law is unconstitutional as applied to past or existing contracts.
If the change be favorable to the creditor, as it must be wher
exemptions are thereby *lessened*, it does not impair the
obligation of the contract, but, on the contrary, strength-
ens it.

In this court, the consideration of the effect of statutes
*enlarging* exemptions from execution began with the case of
*Danks* v. *Quackenbush* (1 N. Y. 129).   Chapter 157 of the
Laws of 1842 provided that " in addition to the articles now
exempt by law from distress for rent, or levy and sale under
execution, there shall be exempted from such distress and levy

and sale, necessary household furniture and working tools and team owned by any person being a householder, or having a family for which he provides, to the value of not exceeding $150." In an action upon a debt contracted before its passage, the Supreme Court had held that the enlarged exemption was not available to the judgment debtor on the ground that the act of 1842 was unconstitutional so far as it applied to pre-existing contracts. The Court of Appeals was evenly divided upon the·question, and the judgment of the Supreme Court was for that reason affirmed. This left the question open for further consideration in this court, however, and it came up again in *Morse* v. *Goold* (11 N. Y. 281) where it was fully discussed by Denio, J., in whose opinion all the judges concurred except one, who was absent at the argument, and it was held that the act of 1842 was not unconstitutional as applied to prior contracts. "There is no universal principle of law," said Judge Denio, "that every·part of the property of a debtor is liable to be seized for the payment of a judgment against him. * * * The question is. whether the law which prevailed when the contract was made, has been so far changed that there does not remain a substantial and reasonable mode of enforcing it in the ordinary. and regular course of justice. Taking the mass of contracts, and the situation and circumstances of debtors, as they are ordinarily found to exist, no one would probably say that exempting the team and household furniture of a householder, to the amount of $150, ·from levy on execution, would sensibly affect the efficiency of remedies for the collection of debts." (p. 289.)

A different view was taken by the Supreme Court of the United States in *Edwards* v. *Kearzey* (96 U. S. 595). The Constitution of North Carolina, which took effect on April 24, 1868, exempted from sale under execution " every homestead and the dwelling and buildings used therewith not exceeding in value $1,000, to be selected by the owner thereof." The defendant's homestead, not exceeding $1,000 in value, had been sold under execution upon judgments rendered

against him on contracts which matured before the Constitution of 1868 took effect, and when the statutory exemptions from execution were materially less.   The Supreme Court of North Carolina had held that his homestead was exempt; but the judgment to this effect was reversed by the Supreme Court of the United States.   Mr. Justice SWAYNE, who wrote the opinion of the court, stated its conclusions thus: "The remedy subsisting in a state when and where a contract is made and is to be performed is a part of its obligation, and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the Constitution, and is, therefore, void." (p. 607.)

In a concurring opinion Mr. Justice HUNT expressed his acquiescence in the conclusion reached by Mr. Justice SWAYNE, speaking for the majority of the court, " not for the reason that any and every exemption made after entering into a contract is invalid, but that the amount here exempted is so large, as seriously to impair the creditor's remedy for the collection of his debt." (p. 610.)   He referred to the New York case of *Morse* v. *Goold* (*supra*) as laying down the correct test, which was whether the increased exemption *substantially* lessened the creditor's remedy.

It does not follow, however, that because a statute enlarging exemptions from execution may be unconstitutional as applied to executions issued on judgments on pre-existing contracts, a statute reducing such exemptions is objectionable on the same ground.   How can it be said that a statute of the latter class impairs the obligation of a contract as the subject-matter of litigation?   To impair " is in some way to weaken or diminish the power which the courts had when the contract was made to enforce it, if enforceable specifically, or to give remedy for damages for failure to perform it." (Miller on Const. of U. S. p. 541.)   " All change is not impairment. Impair means to make worse, to diminish in quantity, value, excellence or strength, to lessen in power, to weaken, to enfeeble, to deteriorate." (*Holland* v. *Dickerson*, 41 Iowa,

367.) A law which does away with an exemption where
there was one before augments the power of the courts to
enforce a contract sued upon or to award damages for its
breach. The constitutional provision against laws impairing
the obligation of contracts, therefore, has no application to a
statute diminishing exemptions from execution on the theory
that such an enactment lessens the enforceability of contracts
when they come to be sued upon and reduced to judgment.

If that constitutional prohibition is invoked at all in the
present case it must be for the protection of some contract
which is assumed to exist between the state and the creator
of the trust or the beneficiary; and that I understand to be
the position of the dissenting judges in the Appellate Divi-
sion. They treat the trust created by the will of Mr. Mon-
tagnie Ward as a " contract, agreement or understanding " and
say : " When Mr. Montagnie Ward made his will, the State,
in effect, said to him, speaking through the statute, ' If. you
will give a portion of your property to A, in trust, and he
will agree to invest the same and pay the income derived
therefrom to your son, the statute under which you are per-
mitted to thus give it will be sufficient to compel A to keep
his agreement.' Mr. Montagnie Ward having given the
property, and the trustees having accepted it, the Legislature
could not thereafter destroy the trust in whole or in part,
because to do so would violate that provision of the Federal
Constitution which prohibits the state from impairing the
validity of a contract. While the arrangement under which
the property was given by the testator and received by the
trustees may not, in a strict or technical sense, have amounted
to a contract, nevertheless it was so in spirit." I am unable
to see what foundation there is for this argument. There
was no provision in the trust deed that the income of the
beneficiary should be exempt from the claims of creditors.
That was simply part of the law of the state as it stood at
the time. In enacting such laws the legislature does not
enter into any contract with its citizens, nor does it offer
to contract with them. The statute was enacted in the exer-

cise of the plenary power of the state to regulate the tenure of real and personal property within its borders. It simply said *sic volo sic jubeo,* and could not limit the power of succeeding legislatures to alter or repeal such legislation. (*Newton v. Commrs.,* 100 U. S. 548, 561.) The law also provided that the interest of the beneficiaries should be unassignable. If the legislature cannot change the law, it would seem that both of these provisions, so far as · their liability to repeal is concerned, must stand on the same basis. Yet over fifty years ago it was unanimously held by this court in *Leggett* v. *Hunter* (19 N. Y. 445) that the legislature could authorize the beneficiary to assign it. Judge ALLEN, writing for the court, said : "It was certainly competent for the Legislature to relieve the daughters from the prohibition contained in the 63d section of the statute (1 R. S. 730), that no person beneficially interested in a trust for the receipt of the rents and profits of lands, can assign or in any manner dispose of such interest." (p. 460.)

But to what will the doctrine contended for lead ? A not uncommon provision in wills grants to an equitable life tenant the power to dispose of the remainder by will. The right to make a will of real estate in this state occurs on the testator arriving at the age of 21 years. Is this provision immune from legislative change ? Would the statute granting power to make a will on arriving at the age of 18 years be inoperative as to property devised under a will prior to its enactment ? The real estate of an infant cannot be sold or disposed of contrary to the provisions of a will which devised it, and under our law infancy continues until the age of 21 years. Would a statute changing the age at which infancy ceases be inoperative as to land devised or given to the infant prior to the enactment of the statute ? If not, why not in the cases suggested as well as the case before us ? Where lies the distinction ? The provision that the income of a trust fund may not be taken to satisfy the debts of the beneficiary is no inherent or necessary part of the trust. At common law the income of every trust, save that of a married woman, was

24

assignable and could be subjected to the claims of creditors. As already shown, the exemption of the homestead of a debtor can be repealed. Why is not that right, especially if the homestead proceeded from the gift of a third party, as sacred as any rights accruing under a trust? It is a mistake to suppose that this court, in affirming the decision in *People ex rel. Roosevelt Hospital* v. *Raymond* (194 N. Y. 189), decided that the legislature could not repeal the provision granted in the act of incorporation exempting real estate of the corporation from taxation. On the other hand, there was no doubt of the existence of such power entertained by any member of the court. Before that it was expressly so decided in *Pratt Institute* v. *City of New York* (183 N. Y. 151) and in *People ex rel. Cooper Union* v. *Gass* (190 N. Y. 323). All that was decided in the *Roosevelt Hospital* case was that the legislature did not intend to repeal the exemption as to property conveyed to the hospital at the time of incorporation.

But the question is really settled by authority. It was decided three-quarters of a century ago by the Court of Errors in *Cochran* v. *Van Surlay* (20 Wend. 365), where it was held by the dissenting judges, as well as by the majority of the court, that a will absolute in terms and unconditional could not by any stretch of terms within the limits of legal or ordinary language be termed a contract. The authority of this case, as well as that of *Leggett* v. *Hunter* (*supra*), has never been impaired so far as I can find by subsequent decision. On the contrary, title to a great deal of property has been taken on the strength of these decisions. There is further curious result if the will of Montagnie Ward be treated as a contract. It never took effect until his death, and it is not very easy to see how there can be a contract with a dead man; but assuming that there were some contract rights vested in Montagnie Ward during his life, on his death he certainly did not take them to the other world. They must have passed to the devisees, legatees, next of kin or heirs at law. But these very contract rights, if he had any, passed under the residuary clause as part of the corpus of the trust of which his chil-

dren were the equitable life tenants. Surely the remainder-men could not succeed to any right of the testator that the income should not be subjected to his debts, for they had no interest in the subject. Therefore, if there were any contract of the testator, those rights have become vested in the beneficiaries themselves. Any attempt to treat the will as a contract seems to me will involve us in a hopeless maze of incongruities from which it will be impossible to escape.

But though the will was not a contract, any person in whom under its provisions any property had vested, could not be deprived of his rights without due process of law both under the provisions of our Constitution and those of the Federal Constitution. That a trustee has no property right in the trust will be seen by the opinion of Judge GRAY in *Metcalfe* v. *Union Trust Co.* (181 N. Y. 39). The property right in this case vested in the defendant, the life beneficiary, and the question is whether the exemption of his income from seizure by his creditors was of such a character that legislation subjecting that income to the obligation and satisfaction of such claims was a deprivation of property without due process of law. It is unquestionable that the legislature could not have directed a diversion of the income to a person who had no claim against the beneficiary. Despite the constitutional provisions, it is settled that by retroactive legislation property may be taken from a person, which, were it not for such legislation, he could have held as his own, and that such legislation does not violate the constitutional provision. Our original statute on the subject of usury made every usurious security or instrument void. In the case of *Dry Dock Bank* v. *Am. Life Ins. and Trust Co.* (3 N. Y. 344) bills of the bank amounting to 50,000 pounds sterling were held void for usury. Apparently shocked by this result the legislature passed a statute providing that no corporation should plead usury. The statute was construed as retroactive and deprived the debtor of his defense to actions brought on loans made prior to its enactment. (*Curtis* v. *Leavitt*, 15 N. Y. 9.) It was there said : " *Prima facie*, at least,

thêre is a debt, for there is the written obligation of the
bank acknowledging the existence of a debt, as there cer-
tainly is, also, a moral obligation to pay." (p. 152.) There
are many other decisions to the same effect in the Supreme
Court of the United States and our sister states. (*Ewell*
v. *Daggs*, 108 U. S. 143.) In the case cited it was said:
"The right which the curative or repealing act takes away
in such a case is the right in the party to avoid his con-
tract, a naked legal right which it is usually unjust to insist
upon, and which no constitutional provision was ever designed
to protect." (p. 151.) In *Watson* v. *Bailey* (1 Binn. 480)
the deed of a married woman was held void because not
*executed* so as to convey her title. Subsequently the legislature
of Pennsylvania passed a statute and gave effect to such deed.
The validity of the statute was upheld by the Supreme Court
of that state (*Mercer* v. *Watson*, 1 Watts, 330), and later by
the Supreme Court of the United States. (*Watson* v. *Mercer*,
8 Peters, 88.) So in *Lewis* v. *McElvain* (16 Ohio St. 347)
notes for the purpose of being discounted at unauthorized
banking associations were made void by the existing legis-
lation of the state. A subsequent statute authorizing recov-
ery upon them was upheld. A review of the cases upholding
similar legislation will be found in 2 Hare's Am. Const. Law
(tit. 35, p. 787 *et seq.*). All these rest on the proposition that
a party has no vested right in a defense to a contract which
he has actually made and which he is under a moral obligation
to perform, though the law at the time makes such contract
void. There is recognized in every civilized country the obli-
gation of a man to pay his debts if he has property out of
which they can be satisfied, and the failure to do so is moral
dishonesty. No one has a moral right to be dishonest. The
income of the defendant in this case exceeds $3,000 a year.
It is idle to say that the beneficiary cannot support himself or
his family on less than that sum. It is only a small propor-
tion of the people in this country who have such an income,
and yet the vast majority of them live and support themselves
and their families and notwithstanding pay their debts.

Under the statute the earnings of the wage earner exceeding $12 a week are subject to the same sort of execution that has been issued in this case against the income of the defendant, and it would be very unfortunate if we were constrained to hold that the income from property held in trust for a debtor, often an idle member of society, should be more secure than that income which a man produces by his own toil and efforts. The decisions of the courts lead us to no such result.

It is a general rule of constitutional law that a citizen has no vested right in statutory privileges and exemptions. (Cooley's Const. Lim. [7th ed.] p. 546.) This rule has been held to apply to statutes exempting property from levy and sale on execution. Such a statute is not a contract between the judgment debtor and the state, and hence an amendment thereof altering the exemptions by lessening them does not impair the obligation of a contract. In *Webb* v. *Moore* (25 Ind. 4) a statute in force at the time of the execution of a mortgage to the school fund required the county auditor to give sixty days' notice of sales for the non-payment of the principal of the loan or interest thereon. By subsequent legislation a notice of three weeks was made sufficient. It was contended that the statute permitting the shorter notice operated to impair the obligation of the contract; but the Supreme Court of Indiana held that if it could be said to affect the contract in any way, it strengthened its obligation by expediting the remedy for its violation. "We think it is well settled," said ELLIOTT, J., "that the remedy given by law to enforce a contract, upon a breach of its obligation, may be changed, from time to time, at the will of the legislature. The point guarded by the Constitution is, that in so changing the remedy, care must be taken that the obligation of the contract be not, thereby, materially lessened, weakened, or impaired. It is equally well settled, that the legislature may give a more efficient remedy for the enforcement of the obligation of a contract, after breach, and that such legislation is not repugnant to the Constitution of the United States, pro-

hibiting a state from passing any law impairing the obligation of contracts." In *Bull* v. *Conroe* (13 Wis. 233) it was held that the privileges of debtors are not vested rights and that the legislature may modify and abridge them by laws which operate directly upon the property, the privileges extended to debtors by exemption laws not being vested rights as to the particular property falling within their protection. In *Holland* v. *Dickerson* (41 Iowa, 367) a mortgage had been foreclosed, and the question was whether the sale must be made under the law which was in force at the time when the mortgage was executed, which allowed the defendant an election to have his property appraised or sold subject to redemption, or could be made under the law in force at the time when the property was offered for sale which denied to the defendant any right either to redemption or appraisement. It was contended that the sale could not be made under the later statute without impairing the obligation of the contract. The court overruled this objection, holding that a remedy providing for the enforcement of a contract might be changed at the will of the legislature, the only constitutional limitation upon this power being that the obligation of the contract should not thereby be weakened; and that a statute which strengthens and accelerates the power to compel the performance of a contract could not be regarded as impairing its obligation. The language of the Supreme Court of Kentucky in *Lapsley* v. *Brashear* (4 Littell, 66) was quoted with approval where it is said that " It is impossible to perceive how the obligation of contracts can be impaired by either accelerating the remedy or by making a fund subject to their satisfaction which was not so when the contracts were made." This last statement is precisely applicable to the facts presented in the case at bar. In *Harris* v. *Glenn* (56 Ga. 94) the Supreme Court of Georgia was called upon to construe the effect of an act of the legislature declaring that property previously exempted from levy and sale by the Code of that state should not be exempt as against the purchase money, and it held that the statute thus repeal-

ing the exemption applied to a mortgage executed for the
purchase money of land prior to its enactment.   "Debtors
have no vested right not to pay their debts," said Judge
BLECKLEY.   "What they have and what they acquire the
state may subject to legal process for the satisfaction of
creditors.   If the state will furnish the process and allow it to
run, nothing that debtors own is beyond its reach.   There is
no fastness that can afford shelter against the public authority.
Exemption of property from levy and sale for the payment of
debts is but a privilege for the time being — mere grace and
favor, dependent on the will of the state.   *   *   *   Exemp-
tion is but a statutory or constitutional shield which, being
removed, the exposure to process is the same as if it had never
been interposed."

In this court the constitutional aspects of legislation lessen-
ing or repealing exemptions from execution do not appear to
have been considered, although the effect of a statute increas-
ing such exemptions was passed upon as we have already
shown in *Morse* v. *Goold* (*supra*).   In *Kittel* v. *Domeyer*
(175 N. Y. 205), however, this court considered that section
of the Domestic Relations Law which empowers a married
woman to cause the life of her husband to be insured and
makes the insurance money free from any claim of the cred-
itors of the husband provided the premium does not exceed
five hundred dollars.   It was said that under this statutory
provision the right of the wife did not rest upon contract but
upon a legislative grant and the court expressly held that the
state clearly had the right to change and regulate the exemp-
tion before the insurance fund reaches the wife.

As to the suggestion that to construe the amendment as
operative upon existing trusts is to deprive the beneficiary of
his property without due process of law it may be said that
to compel a man to apply his property to the payment of his
debts is not to deprive him of his property within the mean-
ing of the Constitution.   Even before the enactment of 1908
the beneficiary was compellable thus to apply all of the trust
income which was not necessary for his education and sup-

port; and the amendment merely measures the *quantum* which must go to the payment of his debts by a different standard. Instead of exempting from the claims of creditors all of the income not requisite for the education and support of the beneficiary the legislature now exempts all the income except ten per cent. Such a statute relates to the remedy of the creditor by changing its extent and in nowise impairs the obligation of any contract or destroys any vested right because the state has never contracted with the beneficiary as to the extent of the exemption which he shall enjoy or conferred upon him any right to a specified exemption, nor did the state in authorizing the creation of trusts which should be exempt to a certain extent from the claims of creditors undertake that the exemption originally prescribed should be permanent, exemption being a matter of privilege for which no consideration proceeds from the creator of the trust. The state retains the right which exists in regard to remediable legislation generally to change the remedy in favor of the creditor of the *cestui que trust.*

The judgment against the defendant was recovered in this case over a year subsequent to the time when the statute of 1908 took effect and it does not appear that the debt on which it was founded was not also incurred subsequent to that time. Therefore, to sustain the position of the appellant in this case it would be necessary to hold not only that the defendant had a vested right to hold the income of the trust fund exempt from the claims of his creditors prior to the enactment of the law, but that he has a vested right to incur such debts as he may see fit in the future with a similar exemption, and that the legislature can pass no statute which will, in effect, say to him, whatever may be the law as to your past debts, if hereafter you incur any you must pay them out of the income of your trust property. Such a result is rather too startling to be contemplated with equanimity. I am satisfied that there is nothing in the fundamental law either of the state or nation which obliges us to adopt a construction with such possible consequences, and I, therefore, advise that

this order be affirmed, with costs, and the certified question answered in the affirmative.

GRAY, J. (dissenting).    I dissent upon the ground that the statute in question, (Code of Civ. Proc., section 1391), did not affect trusts created prior to its enactment.    The trust fund in question was created by the will of Montague Ward, who died in 1879.    He gave to trustees shares of his estate for the benefit of his children, of whom this appellant was one, and directed the payment over of the net income, or interest, to each child during his, or her, natural life.    This appellant's share was set apart in 1879 and its income has been applied to his use since that time.    The statutory provision, under which the application below was made, was enacted in 1908.    I think that to give the statute retroactive effect is to deprive the appellant of property without due process of law.    This trust was lawfully created and when it became operative, upon the testator's death, the law attached but one condition to the full enjoyment of the income by the beneficiary and that was that the surplus income beyond the sum necessary for his education, or support, should be liable to the claims of creditors, as other personal property.    Except for that, such a trust provision was within the protection of the statutes of the state and the right of the beneficiary in relation to it was, and is, property.    The trust originated in the acceptance by the trustees of the property and the trustees' ownership of the trust property was inseparably subjected to a duty, and connected with a right, for the benefit of another.    The trustees' tenure was dependent upon conditions having no relation to any interest of theirs in the estate.    No property right can be predicated of the estate of a trustee.    Every beneficial proprietorship, or interest, is in the *cestui que trust*, for whom the trust estate is held and who has the right to enforce the performance of the trust.    (*Metcalfe* v. *Union Trust Co.*, 181 N. Y. 39, 44.)    The interest of the beneficiary in the maintenance of the trust in all its integrity is a valuable property right, which the statute confers, and while it may be compe-

tent for the legislative body of the state, in the control assumed over the transmission, and testamentary disposition, of property, to attach new conditions thereto for the future, I am quite unable to perceive how it may validly, not to say justly, alter existing conditions affecting property rights, or a vested interest in property. For that is the nature of this beneficiary's interest. Upon the death of the testator and the acceptance by the trustees of the trust estate given them, what resulted was, in effect, a convention, authorized by the law, under which the trustees agreed, and became obligated, to apply the trust income for the benefit of the beneficiary, solely; except so far as it might be shown to exceed his needs. That there was no contract with the state, nor any contract in the technical sense, may be conceded; but there was an engagement assumed by the trustees, which devolved upon them the legal duty to apply, and conferred upon the appellant the right to receive, for his life, the income of the estate held; subject only to the right of creditors to reach the surplus beyond what was necessary for his support. If the legislature may validly change the statute so as, arbitrarily, to direct the application of ten per cent of the income to the claim of a creditor, it may, as competently, direct the application of any percentage; even to the whole. There is a material, indeed a radical, difference between the provision of the statute, which, at the time of the creation of the trust, subjected the surplus income, only, to the claims of creditors, and the amendment, now in question, which subjects a percentage of all trust incomes, arbitrarily, to their claims. I cannot subscribe to a doctrine, which is so radical and so regardless of vested rights. The principle of our decision in *Livingston* v. *Livingston*, (173 N. Y. 377), is as applicable to the present case. In my judgment this appellant's interest in, and right to, the trust provision under this will were safeguarded by the Constitution and may not be impaired. To allow the statute retroactive effect is, as I have before observed, to deprive the appellant of property without due process of law and such a construction is as unnecessary, as it

is violative of a substantial and· vested right.   It is not a
question of exemption, or lessening of exemption; it is a ques-
tion whether that may be taken away, which the statute
authorized as a provision by a testator, when making a final
disposition of his estate.

CULLEN, Ch. J., VANN and WERNER, JJ., concur with
WILLARD BARTLETT, J.; HAIGHT and CHASE, JJ., concur with
GRAY, J.

Order affirmed.