## CRANFORD CO. v. CITY OF NEW YORK.*
### No. 112.

Circuit Court of Appeals, Second Circuit.
Feb. 10, 1930.

*Certiorari denied 50 S. Ct. 411, 74 L. Ed. —-.

Kellogg & Rose, of New York City (Franklin Nevius and Asa B. Kellogg, both of New York City, of counsel), for appellant.

Arthur J. W. Hilly, Corp. Counsel, of New York City (J. Joseph Lilly, Joseph T. Flynn, and Cornelius Bregoff, all of New York City, of counsel), for defendant-appellant.

Before MANTON, L. HAND, and MACK, Circuit Judges.

MANTON, Circuit Judge.

Both parties to this action appeal from a judgment entered by plaintiff for breach of contract. The parties contracted for building a subway railroad in the city of New York. Two items are brought into question here on the plaintiff's appeal, and an item of interest, allowed on the jury's award, is complained of by the defendant. After the judgment was entered, the city of New York stipulated to and did pay the award, except the interest item, and it was agreed that the payment and its acceptance would be without prejudice to the defendant's right to a review of the ruling allowing interest, and also the plaintiff's right to review rulings of the trial judge disallowing two items of plaintiff's claims.

The first of these was a claim for payment for concrete laid under permanent street surface and curbs, in the amount of $14,325.20; the second was for quantities of excavation at contract schedule unit prices, for which the claim is made in addition to the quantities allowed in the final certificate. The amount of this claim is $209,984.93. Interest was awarded in the court below in view of section 480 of the Civil Practice Act of the state of New York, as amended by chapter 623 of the Laws of 1927. It provides:

"In every action now pending or hereafter brought wherein any sum of money shall be awarded by verdict, report or decision upon a cause of action for the enforcement of or based upon breach of performance of a contract, express or implied, other than a contract to marry, interest shall be recovered upon the principal sum whether theretofore liquidated or unliquidated and shall be added to and be a part of the total sum awarded."

The contract was entered into July 14, 1914, and was to be performed in 30 months. The contract work was completed in January, 1919. At the trial, it was found that the plaintiff was delayed unduly by the defendant. The amount of damages found by the jury, as resulting from this delay, has been acquiesced in, by the defendant in the payment thereof.

The first item of plaintiff's appeal is based on the claim of payment for concrete base laid under the asphalt covering in repaving or restoring the streets after the subway construction work had been finished. Payments were made, under the contract, on a unit basis. Item 30 covered the item prices for restoration of street surface and reads:

"For street surface restored as follows: * * *

"(e) For repavement of roadways between curb lines with asphalt pavement, the sum of $2.50 per square yard.

"(f) For repavement of roadways between curb lines with granite block pavement, the sum of $1.50 per square yard.

"(g) For repavement of roadways between curb lines with asphalt block pavement, the sum of $2.50 per square yard."

Item 6 of the contract, providing for payment for concrete masonry, provides for payment of concrete masonry on the basis of $7 per cubic yard. The argument of the plaintiff is that it should be paid for having laid a concrete base under the asphalt on the basis of item 6. Article 10 of the contract provides that it would be necessary to take up and relay the sidewalks and roadway pavements or other surface material, and further that the contractor must "do all such additional and incidental work as may be necessary for * * * the reconstruction and restoration of the street pavements and other surfaces, and of all surface, subsurface and * * * other structures which may have been directly or indirectly affected by, disturbed or injured by the contractor in the progress of the work of construction, to as useful, safe, durable and good condition as existed before construction was begun. All of such work of every description * * * is part of the work which is included in this contract and which the contractor agrees to perform for the prices herein agreed upon." When the plaintiff laid the concrete and rested thereon either asphalt or granite rock, it but restored the surface "to a condition similar to and equally as good as that existing previous to the commencement of construction," and section 423 of the contract provides for payment

for surface restored in the prices stipulated under schedule item 30. It is necessary, in restoring pavement, to lay the concrete base, and the parties stipulated that payment therefor was to be made under item 30, and not under item 6.

It is conceded that the plaintiff has been fully paid under item 30, and, since that item of the contract between the parties fully expresses the agreement as to payment for the work, the objection to the introduction of evidence, tending to show it to be the custom that in paving and repaving with asphalt pavement in other contracts there is specified a price per square yard for the asphalt pavement as such and payment made separately for concrete foundation, was properly sustained.

■■■ As to the second of the plaintiff's claims, under the contract, the plaintiff was to be paid for earth excavation under items 1 and 2, and it claimed a failure to estimate and pay for 68,399 cubic yards at $3.07 per cubic yard. Article 38 of the contract required the engineer to certify in writing to the commission the quantities of work performed by the contract from actual measurements and also the prices under and in accordance with the terms of the contract. Article 24 made the engineer final and conclusive in the determination and estimate of quantities in case any question touching the contract arose between the parties, and required a determination and estimate in favor of the contractor as a condition precedent to receiving any money under the contract. Sections 88, 89, and 91 of the contract provide:

"Section No. 88. The net outside width of the railroad structure, as ordered and indicated on the drawings, and the depth of the railroad structure, also as ordered and indicated on the drawings, are the ordered net lines of excavation and will govern as to width and depth in the measurements for payment for excavation for the railroad. No deduction from the volume of excavation determined by the ordered net lines of excavation will be made on account of vault space or spaces occupied by pipes and other subsurface structures.

"Section No. 89. There will be no measurement or allowance made nor money paid for excavation outside, (below or wider than) the net measurement lines as above indicated; and no allowance shall be made for any excess excavation caused by slips or slides. It is understood and agreed that for all such matters the contractor has estimated and allowed in the unit prices of the schedule."

"Section No. 91. Excavation shall be paid for at the prices stipulated in schedule items 1 and 2."

Excavations which were made, in addition to the actual excavations called for in the contract drawings and within the lines thereof, whether done for the accommodation of the plaintiff in carrying out the work or for other reasons, are unimportant, for the work to be paid for under the contract is but that required to be done by the contract drawings, and the engineer in charge properly estimated and allowed only for such work. This we hold to be the intent of the contract and what the defendant intended to pay for. It would be unreasonable to hold that "net outside width" meant more than the payment of earth excavated within the lines shown by the contract drawings. There is no evidence of an arbitrary or fraudulent determination by the engineer and his decision is final. Dock Contractor Co. v. City of New York (C. C. A.) 296 F. 377; American Pipe & Const. Co. v. Westchester County (C. C. A.) 292 F. 941; Barker et al. v. City of New York (C. C. A.) 242 F. 350.

■■■ The defendant's appeal, urging error in the allowance of interest is based upon the claim that the section (480) of the New York Practice Act quoted is unconstitutional, because it is in contravention of article 1, § 10, cl. 1, of the federal Constitution, in that the legislation is an impairment of the obligation of the contract; also the Fourteenth Amendment of the federal Constitution, in that no state may deprive any person of his property without due process of law. The items of damage for which recovery has been had represent amounts, as stipulated between the parties, of the increased cost to the plaintiff in the performance of the work resulting from the delays caused by the defendant. The interest allowed is on the amounts of the increased costs. The state Court of Appeals held that this statute was constitutional in so far as applied against the state, and that the latter could not complain that the enactment was void as a violation of the due process clause. Sweeney v. State of New York, 251 N. Y. 417, 167 N. E. 519. The Supreme Court has pointed out that a municipal corporation is merely a department or arm of the state, and as such it cannot raise, as against legislative enactment, either that it deprives it of property or impairs the obligation of the contract. In City of Trenton v. State of New Jersey, 262 U. S. 182, 43 S. Ct. 534, 537, 67 L. Ed. 937, 29 A. L. R. 1471, the court said:

"In the absence of state constitutional provisions safeguarding it to them, munici-

palities have no inherent right of self-government which is beyond the legislative control of the state. A municipality is merely a department of the state, and the state may withhold, grant or withdraw powers and privileges as it sees fit. However great or small its sphere of action, it remains the creature of the state exercising and holding powers and privileges subject to the sovereign will."

And the court further pointed out that the city or other political subdivision may not invoke restraints upon the power of the state in the claim of protection under the contract clause of the Fourteenth Amendment. The City of New York v. Campbell, 277 U. S. 573, 48 S. Ct. 435, 72 L. Ed. 994; Risty v. C., R. I. & Pac. Ry. Co., 270 U. S. 378, 46 S. Ct. 236, 70 L. Ed. 641; City of Newark v. State of New Jersey, 262 U. S. 192, 43 S. Ct. 539, 67 L. Ed. 943. The same reasoning applies in answer to the claims that article 1, § 6, of the state Constitution is violated. The defendant claiming unconstitutionality of that provision meets the same obstacle. As a municipality of the state, there is the same reason for the city to pay interest, which the statute imposes, as there is the obligation on the part of the state to pay interest. Sweeney v. State of New York, supra. There are the same demands of equity and justice which require payment of interest. No charity or bounty is required or imposed by the act, merely an obligation of one who has retained money due under the contract to pay interest thereon during the period of detention, and by the exercise of its legislative power, it may well impose the obligation to pay interest upon itself or its political subdivision. This does not impair contracts, but merely extends the remedy. The defendant, by its breaches, has delayed the performance of the contract, to the damage and loss of the plaintiff. The plaintiff has not been a party to these delays, and was entitled to recover, according to the principles of law existing at common law, just compensation for such delays which involved the increased cost to the plaintiff. Interest is incidental to just compensation and measures only the loss of the use of the money to the innocent party, who is out of pocket to the extent of the damages in the case. Interest has always been regarded by the national and state courts as incident to just compensation. Miller v. Robertson, 266 U. S. 243, 45 S. Ct. 73, 69 L. Ed. 265; Seaboard Air Line Ry. Co. v. United States, 261 U. S. 299, 43 S. Ct. 354, 67 L. Ed. 664; United States v. Rogers, 255 U. S. 163, 41 S. Ct. 281, 65 L. Ed. 566; Prager v. New Jersey Fidelity & Plate Glass Ins. Co., 245 N. Y. 1,

156 N. E. 76, 52 A. L. R. 193. As applied to the city, the statute, which is attacked as unconstitutional, in no way gives a remedy in excess of the liability of the defendant for breach of the contract and to pay damages resulting therefrom; it does not impair the obligation of the contract which was broken. It provides a remedy for the defect, if any there be, in the rule for computing the damages, and then only to the extent of the obligation of the party which broke the contract by the delay.

The city may not allege that the statute deprives it of property without due process of law, or operates to impair the obligation of the city's contract. It merely compensates the plaintiff for the loss of the money during the time it was withheld. J. C. League v. Texas, 184 U. S. 156, 22 S. Ct. 475, 46 L. Ed. 478; Blackwell v. Finlay, 233 N. Y. 361, 135 N. E. 600; Brearley School v. Ward, 201 N. Y. 358, 94 N. E. 1001, 40 L. R. A. (N. S.) 1215, Ann. Cas. 1912B, 251; Salter v. Utica & Black River R. R. Co., 86 N. Y. 401.

Judgment affirmed.