Vast Voorhis, J. (dissenting).
The controlling question of public policy in this case concerns not the unity of husband and wife but whether spendthrift trusts are lawful. Where the Legislature has spoken, within constitutional limitations, the public policy of the State is what the Legislature says it is (Messersmith v. American Fid. Co., 232 N. Y. 161, 163). Section 15 of the Personal Property Law provides that “ The right of the beneficiary to enforce the performance of a trust to receive the income of personal property and to apply it to the use of any person can not be transferred by assignment or otherwise.”
This bar against alienability by the beneficiary has been upheld in the courts (Matter of Wentworth, 230 N. Y. 176, 185). In that case the court said: “ The purpose of the statute as has been stated over and over again was to permit a testator thus to make secure provision for the support and maintenance of an improvident person for life and to place it beyond the reach of such person or his creditors to defeat the purposes of the trust by alienating and squandering the principal.” The principle applies to future income, except that such assignments constitute a revocable order to the trustee, valid until revoked by the beneficiary (Matter of Oakley, 116 Misc. 494, affd. 207 App. Div. 811). Section 15 of the Personal Property Law makes no exception in favor of an assignment of future income by a beneficiary to his wife or children. The abstract theory of unity of husband and wife, a throwback from the trend of the Married Women’s Acts, does not support an assignment for the benefit of children. There is no reason to believe that the Legislature intended this outworn fiction to support an assignment by a beneficiary of future trust income to his wife, on the basis that in doing so he is transferring it to himself. Nothing to the contrary was decided in Wetmore v. Wetmore (149 N. Y. 520; 162 N. Y. 503), *266 which held that under the Revised Statutes* (Rev. Stat. of N. Y., part II, ch. I, tit. 2, art. 2, § 57) accrued alimony may be ordered paid under the equitable powers of the Supreme Court out of surplus income from trusts beyond the sum necessary for the support of the person for whose benefit the trust is created. It held that such surplus might also be applied to the payment of current alimony. Jurisdiction in such instances was held to be continued in the Supreme Court, permitting applications to be made by either party at the foot of the decree from time to time for such changes as circumstances might warrant (149 N. Y. 520). A modification was made at the foot of the decree at the instance of the husband after the remarriage of the wife (162 N. Y. 503).
Neither of the Wetmore cases involved assignment of trust income by the husband-beneficiary. It was simply held that the wife was entitled to participate as a preferred creditor to the extent ordered by the Supreme Court in the exercise of its equitable jurisdiction in what was found to be the surplus beyond that which was necessary for the beneficiary’s support. e
In Matter of Yard, (116 Misc. 19) Surrogate Foley held that the holding in the Wetmore case should be extended to a situation where husband and wife were living apart under an agreement of separation which contained an assignment of trust income. He said: “ I see no difference between the direction in a decree of alimony, and the amount allowed in the separation agreement. In the former case there is an element of compulsion although within the proper jurisdiction of a court of equity. In the latter case, the husband consents to the allowance, thereby recognizing the duty to provide and the reasonableness of the amount fixed by both parties. Indeed under all the authorities, the terms of a valid separation agreement seem to be equally as forceful and effectual as a judicial allowance of alimony, and they are conclusive as to the amount of alimony either temporary or final ” (p. 22, citing cases).
Upon the present appeal we are not dealing with a separation agreement. The parties were at pains to state in this contract of assignment that “ Nothing herein contained shall constitute a formal separation agreement between the parties ’ ’. The basis *267 on which Surrogate Foley purported to extend the Wetmore rule to separation agreements consequently is absent insofar as the present appeal is concerned. Beyond that, however, the decision in the Yard case (supra) does not follow but is in conflict with the Wetmore decisions in this court. Instead of the assignment of trust income being irrevocable, as Yard held that it would be under a separation agreement, the Wetmore decisions held that the determination of the court awarding a portion of the trust income to the wife as a creditor was not a contractual obligation and was subject to modification at any time by application at the foot of the decree. The obiter dicta in Matter of Littauer (285 App. Div. 95, 98-101) are without support from other decisions in this State and are contrary to the express language of section 15 of the Personal Property Law and the corresponding section 103 of the Beal Property Law.
There is no reason to suppose that in authorizing spendthrift trusts the Legislature had in mind to except irrevocable assignments of income to husbands or wives. The established case law is to the effect that the Legislature intended it to be quite sufficient that separated wives should be permitted to participate under court order in surplus income beyond what the court finds is necesssary for the support of the beneficiary. Even if a separation agreement were to be deemed to be equivalent to the alimony provisions in a matrimonial decree, as Surrogate Foley said, it does not follow that it could have a greater effect than a matrimonial decree in operating as an assignment of trust income or that it could attach to more than the surplus income under court order pursuant to section 98 of the Beal Property Law.
The policy of the Legislature is insofar as possible to enable testators and settlors to do what they will with their own. The cornerstone of spendthrift trusts is the intention of the creator of the trust that the beneficiary be protected from his own improvidence, in passing through the manifold and sundry changes of this mortal life. One of the pitfalls against which the creators of trusts seek to protect their descendants is the alienation of their substance to mercenary husbands or wives. I do not imply that either Mrs. Oliver Knauth is such a person, but in deciding cases it is necessary to give thought to how the decision will affect other cases. It can hardly be doubted that *268 in creating spendthrift trusts the usual testator or settlor has firmly in mind to secure an improvident child or grandchild against the possible acquisitiveness of a spouse.
This beneficiary has married again. Although that does not exempt him from obligation to make suitable provision for the support of his former wife and children, the second wife is a fact and not a theory. The disposition of his trust income as between both wives and the children, beyond what is required for his support, should be left to the sound judgment of a court of equity as in the Wetmore case, unaffected by any transfer which he purports to have made to his first wife in contravention of the statute in such case made and provided. Whether what he has done is reasonable is beside the point. If the amount which he purported to transfer to his first wife is reasonable, it should be continued on that ground and not because he made an assignment of it.
The order appealed from should be modified in accordance with this opinion.
Chief Judge Desmond and Judges Dye, Burke, Foster and Soileppi concur with Judge Fuld; Judge Van Voorhis dissents and votes to modify in accordance with his dissenting opinion.
Ordered accordingly.

Now section 98 of the Real Property Law, also applicable to trusts of personalty (Brearley School v. Ward, 201 N. Y. 358).